## PERRE *v.* CASTRO *et als.*

A TENDER of the money due on a bond and mortgage, after the law day of the mortgage, and a refusal to accept the money, do not discharge the lien of the mortgage.

Cases commented on.

C. executes a bond and mortgage to D. and P. for money loaned, payable in three years with interest. On the same day C. executes a lease of the mortgaged premises to D. and P. partners, for three years, the lease referring to the bond and mortgage, and providing that D. and P. shall take immediate possession, which C. covenants shall be quiet and peaceable. D. and P. stipulate, that, if they have such possession, the interest on the bond and mortgage shall not be collected. D. becomes sole owner of the bond and mortgage and assigns them, under seal, to plaintiff. *Held*, that, in a foreclosure suit, plaintiff is entitled to interest on the bond and mortgage from the time of notice to defendants of the assignment, if not from the assignment itself, the term of the lease having expired before such notice, the whole interest of C. having passed to third persons, and the lease not recorded—defendants, being C., P. and purchasers under foreclosure of subsequent mortgages; that D. and P. could not, by continuing to occupy the premises after the term, so renew the lease in law, as to prevent plaintiff from enforcing the contract according to its terms.

On a settlement between D. and P. it was agreed verbally, that D. was the owner of the mortgage debt. *Held*, that this is a sufficient transfer, P. not objecting, being party to the suit, and D. having, in fact, advanced the money loaned. The decree will protect all parties.

In a foreclosure suit, the decree will not apportion the debt among the several cotenants of the land, who acquired undivided interests therein at the same time, and subsequent to the execution of the mortgage.

APPEAL from the Seventh District.

Bill by plaintiff as assignee of a mortgage given by Antonio Maria Castro, to John Provizza and John Davis, for the foreclosure and sale of the mortgaged premises.

The bill was filed on the 8th of July, 1858, against Antonio Maria Castro, John Provizza, William A. Piper, Thomas D. Mathewson, John Galvin, and Joseph Emeric. Subsequently, by leave of Court, and with the consent of opposing counsel, the bill

was amended, and additional defendants joined, viz: Jacob M. Tewksbury and John Davis.    Antonio Maria Castro was the sole mortgage debtor; the other defendants were joined on account of various liens and interests which they had or claimed in the equity of redemption.    John Provizza was made a defendant, not only on that account, but for the purpose of determining all rights, legal or equitable, claimed by him in the mortgage and mortgage debt.

Emeric, who was not served with the process until the 3d of August, 1858, and who, having received payment of his demand, had released to Provizza his mortgage, filed a disclaimer setting forth the payment and release.

Provizza filed a separate answer, admitting the making of the several mortgages mentioned in the bill, also admitting the tender on the 31st of January, 1858; but, denying the right of Davis to assign the whole bond and mortgage given to them jointly, and denying also the interest of Martina Perre as assignee of said bond and mortgage.    He also, in his answer, admits the lease as set forth in the opinion; also, the entry upon the premises, and receipt of the profits by himself and Davis, in discharge of interest on the three thousand dollars.

Mathewson and Galvin filed a joint answer, setting forth the facts as contained in the answer of Provizza, and also setting up the tender in bar of the relief sought against their interest and estate in the premises, as if specially pleaded.

The other facts appear in the opinion.    The various interests acquired by the several defendants, except Castro, Davis, and Provizza, were subsequent to the mortgage sought to be foreclosed.

Castro and wife, in 1854, mortgaged his interest in the ranch to defendants, King and Tewksbury.    Tewksbury assigned his interest to Bradley.    There was a decree of foreclosure and sale at the suit of King and Bradley, under which, July 3d, 1856, the premises were sold to them.

Shortly thereafter, King assigned his interest to William A. Piper and Thomas D. Mathewson; and, on the 22d of January, 1857, the sheriff made a deed of conveyance of the premises to Bradley, Piper, and Mathewson, by means whereof Bradley became seized of one undivided half, and Piper and Mathewson

became seized of the other undivided half of the estate of Castro, chargeable with the lien of the former mortgage.

Within a few days thereafter, Tewksbury, by mesne conveyances, acquired the interest of Bradley.

At the April Term, 1859, the Court rendered a decree in favor of the plaintiff for the principal sum of the mortgage debt, viz : three thousand dollars, with interest at the stipulated rate of ten per centum per month, to commence running from November 9th, 1857, the date of the assignment of the mortgage to the plaintiff. Afterwards, on motion for a new trial, by certain of the defendants, the Court refused the motion, on condition that the said principal sum should only draw interest "from and after notice of the assignment of the said mortgage to the plaintiff, given to the parties now defending against this suit, to wit: from and after the 9th day of August, A. D. 1858," and that the plaintiff should file a *remittitur* of prior interest, etc.; which condition the plaintiff duly complied with.

From this judgment and the order, on motion for a new trial, the defendants, Mathewson, Galvin, and Provizza, appeal.

*E. W. F. Sloan*, for Appellants.

I.   That a tender of payment made on the day the debt falls due, will, though not accepted, discharge the mortgage security, is a general proposition which will not be questioned. Whether a tender made at any time afterwards will have the same effect, will depend upon the nature and character of the mortgage, resulting from its own language, or the law of the land. (2 Coke's Litt. Secs. 132, 334, 335, 338.)

Under our statute, a mortgage does not pass the legal estate, either before or after default in payment. It confers upon the mortgagee an equitable estate or interest only—a right, by the decree of a Court of Equity, to have the land sold for the payment of the debt; and, by that means, ultimately divest the estate of the mortgagor and foreclose him forever.

A mortgage, in this State, seems to be precisely in the nature of a pawn of personal property. It is true, that in case of a pledge of goods, the pawnee takes possession, but that is a necessary incident to the pledging of chattels; the legal estate in

34

the thing pledged does not pass by the delivery, but remains with the pawner.

If the debt, which it was intended to secure, be not paid at maturity, the pawnee can proceed to have the goods sold. But, until then, the right of the pawner to reclaim his pledge by payment or tender continues, notwithstanding his default. And if, upon tender, the pawnee refuses to accept, an action lies to recover back the pawn. (*Coggs* v. *Bernard*, 2 Lord Raym. 909; 2 Salk. 522; Jones on Bailm. 77—80; *vide*, also, *Ratcliff* v. *Davis*, Yelv. 178, and Note; *Cortelyou* v. *Lansing*, 2 Caine's Cases, 206.)

The same result must follow a payment, or tender of payment, by the mortgagor of land, in this State, provided the same be made before the mortgagee has taken active steps on his part to prevent it. In Massachusetts and several other States, it has been held that a tender, after the law day, will not operate to defeat the estate of the mortgagee, even though his right to redeem by a bill in equity still remained. It is, however, because, in those States, the mortgagee is deemed to have the legal estate, and may, if not before, at least upon the default of the mortgagor, enter and become seized of the land, leaving the mortgagee nothing but a mere equity of redemption, given by statute for a limited period only. (*Hill* v. *Payson*, 3 Mass. 559; *Maynard* v. *Hunt*, 5 Pick. 243; *Parsons* v. *Wells*, 17 Mass. 419; *Vose* v. *Handy*, 2 Greenl. 333; *Smith* v. *Kelly*, 27 Maine, 237; *Gray* v. *Jenks*, 3 Mason, 523.)

In all those cases, upon a bill to redeem, after default once made, it would be incumbent on the mortgagor to bring the money into Court, or make tender with his bill. That would result from well established principles of equity, which are, however, applicable alone to the plaintiff, who is seeking affirmative relief.

The same state of facts, which is unavailing to the complaint, as a foundation for relief, may be, and often is, a good ground of defense.

The defendant is, generally, at liberty to press into service every legal advantage thrown in his way without the imposition of terms. (17 Ves. 382; 1 Sim. & Stee. 365; 17 Ves. 418; 2 Story's Eq. Sec. 693; 17 Ves. 167; 18 Id. 335; 2 Story's Eq. Secs. 1502, 1503; 18 J. R. 565, 566; 1 Story's Eq. Sec. 301.)

Perre *v.* Castro.

That a tender after the law day of a mortgage and refusal, discharges the lien, see *Jackson* v. *Crafts*, 18 Johns. 111; *Edwards* v. *Farmers' Fire Insurance Co.* 21 Wend. 467; S. C. 26 Id. 541; *Cameron* v. *Irwin*, 5 Hill, 276; *Arnot* v. *Post*, 6 Id. 67; S. C. 2 Denio, 344; *Swett* v. *Horn*, *W. & R. Hazleton*, 1 N. H. 332.

Piper and Mathewson being lawfully seized in fee of an undivided moiety of the mortgaged premises, not being the debtors, tendered the whole amount due before any steps to foreclose had been taken. They had not a mere equity of redemption. They were not compelled to go into a Court of Equity to redeem or recover their estate. They had a right to rely upon their legal title, and to protect it against any future contingency by discharging the mortgage. They had nothing to do but perform the condition of paying the debt, and the tender was a full compliance on their part. We are not plaintiffs seeking equitable relief, and it is only upon a bill to redeem that the party, after a tender once made and refused, is obliged to bring in the money, or renew the tender in Court. (*Cliff* v. *Wadsworth*, 2 Young & Col. 598.)

The Recording Act, which provides for the releasing of mortgages upon the record, expressly recognizes the right of the mortgagor to discharge the mortgage by performing the condition, as well after default as before. (Act concerning Conveyances, Sec. 40.)

It makes it the duty of "the mortgagee, his personal representative, or assignee, as the case may be, after a full performance of the conditions of the mortgage, whether before or after a breach thereof," to execute, acknowledge, and deliver, a release of such mortgage.

In this State, a mortgage is a conveyance, within the meaning of the Recording Act, but in no other sense. And it is only for the purposes of the record that a release in writing need be executed at all.

II.   The decree of the plaintiff should, in any event, have been limited to the principal sum of three thousand dollars. The personal obligation of Castro was not a negotiable instrument; and, besides, it was overdue at the time of the alleged assignment by Davis to the plaintiff, and was, therefore, subject to all counter

equities. (*Narrish* v. *Marshall*, 5 Madd. Ch. 481 ; *Williams* v. *Sorrell*, 4 Ves. 389.)

But the right of the mortgagor, here, to be exonerated from the payment of interest, is not reduced to the principle of off-set. It rests upon the express stipulation contained in the lease, that the use of the land should compensate for the use of the money.

Again, after the expiration of the term mentioned in the lease, the lessees became, by operation of law, tenants from year to year, and entitled to six months' notice to quit. The year expired on the 13th of August, and the bill was filed on the 8th of July, 1858. It was, therefore, impossible that the mortgagor, or his assigns, could have entered upon the premises prior to the 13th of August, 1859. Nothing short of a surrender of the premises to the mortgagor, or his assigns, with a demand of the principal debt, could have given the right to claim interest.

If, by the terms of the assignment, she became entitled to interest, she must look to her assignor for it.

III. Upon the supposition, that the mortgage debt was properly chargeable upon the respective estates held by each of the cotenants, the decree should have apportioned the common burden in such a manner, that any one might have discharged his own particular estate by the payment of his proportionate share of the charge, if he thought proper to do so. (*Raun* v. *Reynolds*, 11 Cal. 18.)

IV. The formal assignment of the bond and mortgage to the plaintiff was a transfer of the interest of Davis only. Both Provizza and Davis were named as joint obligees in the bond, and joint mortgagees in the mortgage. These instruments were delivered to them jointly, and for a time at least, remained in their joint custody. They also entered and became possessed as joint tenants of the mortgaged premises under the lease.

*William H. Clark*, for Respondent.

1. Appellant's fourth point is, that the assignment of the 9th of November, 1857, if valid for any purpose, should have been held to transfer the interest of Davis as a co-mortgagee only.

Upon the pleadings, it may be inferred that Provizza had no real interest in the first mortgage.

Upon the evidence, one of three conclusions seems to follow: Either Provizza never had any interest in the bond and mortgage, or such interest as he had as copartner with Davis was assigned to Davis, by parol, or there remained in him, as to one-half, an apparent legal title or estate, held in trust for Davis and his assigns, who were in equity entitled to it.

In the latter point of view, the Respondent acquired the legal title to one-half of the mortgage and the mortgage debt, and the equitable right or title to the other half. In any other aspect, the complete and legal title to the whole, passed to the Respondent under the assignment of the whole, by Davis. (2 Sto. Eq. Jurisp. Chap. 23, on Implied Trusts; 2 Sugden on Vendors, 7th Amer. Ed. 391, 392, Chap. 18, Sec. 2, and numerous authorities in the marginal note; *Boyd* v. *Lane*, 1 Johns. Ch. 582; *Elliott* v. *Armstrong*, 2 Blackf. 109; *Jemmison* v. *Graves*, Id. 441; *Page* v. *Page*, 8 N. H. 187; *Larkin* v. *Rhodes*, 5 Port. 196; *Enos* v. *Hunter*, 4 Gilm. 211; *Buck* v. *Pike*, 2 Fairf. 9; 4 Kent's Com. 6th Ed. 306, in Note.)

If a mortgage is made to two, to secure advances made by one only, they take the legal estate as tenants in common; but the party not interested in the debt, holds his moiety as trustee for the other. (*Root* v. *Bancroft*, 10 Met. 47.)

The effect of the tender made after the maturity of the bond and mortgage, and after the law day had passed, was not to impair or discharge the lien of the mortgage. (*Merritt* v. *Lambert*, 7 Paige, 344, Opinion of Chancellor Walworth; *Maynard* v. *Hunt*, 5 Pick. 243; *Smith* v. *Kelly*, 27 Me. 237; *Hill* v. *Payson*, 3 Mass. 559; *Parsons* v. *Wells*, 18 Id. 419; *Patchin* v. *Pierce*, 12 Wend. 61; *Vose* v. *Handy*, 2 Greenl. 323; *Crosby* v. *Chase*, 17 Me. 369; *Arnot* v. *Post*, 6 Hill, 67.)

The law cited by the counsel for the Appellants applicable to pawns, is undoubtedly good law. But a pawn essentially differs from a mortgage of either personal or real property, and a chattel mortgage and a mortgage of real estate likewise differ in their nature. They are all governed by different rules.

A pawn or pledge is defined to be a bailment or delivery of goods by a debtor to his creditor, to be kept until the debt be discharged. (2 Kent's Com. 577; Sto. on Bailments, Sec. 286;

*Cortelyou* v. *Lansing,* 2 Caine's Cases in Error, 200; *Barrow* v. *Paxton,* 5 Johns. 259; *McLeod* v. *Walker,* 10 Id. 472.)

In this State, the mortgagee of land has no property or estate whatsoever in the land, either before or after condition broken. He can only acquire it like any other purchaser, by buying at the sale under the decree. The most noticeable difference, however, between the pawn and the real estate mortgage, is, that the delivery of the thing pledged must be made at the time of the pledge, and possession retained by the pawnee.

As to interest, the agreement by Davis and Provizza, for the remission of the interest for three years, was limited to the term of the lease, or, at the furthest, to the term with the stipulated renewal for one year longer. The term with the renewal expired on August 13, 1856. After that time, so far as the express agreement is concerned, the arrangement ceased. Davis and Provizza might then be considered either as tenants at will or as mortgagees in possession; and, in either event, only liable to Castro and his assigns for the reasonable rents of the premises. The Appellants, Galvin and Mathewson, holders of the equity of redemption derived from Castro, purchased his fee without notice of this unrecorded lease. What is to hinder their proceeding against Davis and Provizza, the tenants in possession, for the collection of the rents for use and occupation since their purchase, perfected by the Sheriff's deed in January, 1857.

The authorities cited by Appellant, (5 Madd. Ch. 481; 4 Vesey, 389,) relate only to actual payments made by mortgagor to mortgagee after an assignment of the mortgage to a third party; the mortgagor having no notice of such assignment.

The only case that has been found presenting a similar state of facts, is *Wolcott* v. *Sullivan,* (1 Edw. Ch. 339.) It was upon the authority of this case that the Court below ordered a remission from the decree, so that the principal should only draw interest from the time that the Appellants received notice of the assignment of the mortgage to the Respondent.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

Antonio Maria Castro executed on the 13th of August, 1852, a bond to John Davis for three thousand dollars, payable in three

years, with ten per cent. per month interest, and, to secure this sum, executed at the same time a mortgage upon one-half of the undivided interest of Castro in the estate of his late father, called the San Pablo Ranch. This ranch contains four and a half leagues. This land the mortgagor held in common with his brothers and sisters, seven in number, "it being understood," the deed recites, "that the quantity conveyed shall not exceed the one-sixteenth part of the San Pablo Ranch, or fourteen hundred acres." Then follows in the deed a specified parcel of the ranch, represented to contain one thousand acres, more or less.

On the same day with the mortgage, Castro made to Davis and Provizza a written lease for the period of three years, which, in its recital, refers to the mortgage, and describes the mortgaged premises as one-half of his interest in the San Pablo Ranch. It also refers to the specific quantity of one thousand acres. This paper provides that Davis and Provizza shall immediately take possession, and Castro covenants that they shall have the peaceable and quiet possession of the premises during the term of the lease. Davis and Provizza stipulate that if they have such possession they will remit the interest on the bond and mortgage for the three years; but if they should be interrupted in their possession, then the full amount of principal and interest shall become due. Also, that if Castro cannot pay the mortgage at the expiration of the term, both the term of the lease and the time of the mortgage shall be extended one year longer, with the same conditions as to peaceable possession. The lease was not recorded, and it does not appear that the Respondent, prior to its being set up by the Appellant, had any knowledge of its existence. On the 9th of November, 1857, Davis assigned, under seal, to the Respondent, the bond and mortgage. On the 15th of December, 1854, Castro executed a second and subsequent mortgage of his entire interest in the San Pablo Ranch. Bradley and King became the holders of the mortgage and foreclosed. Provizza, Piper, Mathewson, Galvin, Emeric, and Tewksbury, through divers mesne conveyances, acquired various interests. Provizza is joined as defendant by reason of the apparent legal estate vested in him under the first mortgage as one of the mortgagees.

Davis and Provizza were interested together as partners about the time of the execution of this mortgage, in certain farming

operations, on land in the San Pablo Ranch. Davis advanced to Castro three thousand dollars, or more, as a loan, and was to receive a mortgage on the land of Castro as security; also, a lease of a particular tract of agricultural land, which Castro was represented to own or control, with possession. Davis and Provizza came to a settlement of the firm matters, the result of which was the concession and agreement that Davis was entitled, as sole owner, to this mortgage debt due from Castro, and the Court below finds that he was equitably the owner, though no formal or written assignment seems to have been made to him by Provizza.

On the 31st of January, 1857, Piper and Mathewson—Tewksbury refusing to join—tendered, or attempted to make a tender to Provizza and Davis of the mortgage money, which was refused. The sum of three thousand two hundred dollars, in a bag, was offered, as appears by the proof. Emeric, who was a party defendant, was offered as a witness. Emeric held a mortgage on a portion of the premises, dated February 1, 1858; he discharged it July 23d, 1858. This was after the filing of the bill, but before service of process. He made no defense, and filed a disclaimer. But the Court rejected him as incompetent. It is not necessary to consider the question as to his competency, for we shall place the decision upon grounds broad enough to cover the case as made by his evidence. It will be perceived that the tender was made after the expiration of the three years mentioned in the lease, and also after the expiration of the one year of renewal— a period which was also subsequent to the assignment by Davis to the plaintiff.

The counsel for Appellant contends that this tender was sufficient in itself, and that the effect of it was to discharge the lien of the mortgage, and this though the law day of the mortgage had passed.

This proposition has been the one most elaborately argued by the respective counsel. We have considered it with care. It is very true that the proposition affirming this effect of a tender has the sanction of several decisions of the Courts of New York. In *Jackson* v. *Crafts*, (18 Johns. 110,) it was held that the tender and refusal, though after the law day of the mortgage, amount to a discharge. But this doctrine, though afterward apparently

affirmed in *Edwards* v. *Farmers' Insurance & Loan Co.* (21 Wend.) was disputed by Mr. Justice Bronson in an able dissenting opinion. That case came before the Court of Errors, and is reported in 26 Wend. 451. Chancellor Walworth, who held in *Merritt* v. *Lambert*, (7 Paige, 344,) that the rule was otherwise, adhered to that opinion, observing "that it would remain for the other members of this Court to decide whether the Vice-Chancellor, and Mr. Justice Bronson and myself on the one side, or the two other Justices of the Supreme Court on the other, have taken the correct view of the important legal questions involved in the case." Upon the vote the Chancellor and seven Senators voted for reversal. The President and ten Senators for affirmance.

In the case of *Arnot* v. *Post*, (6 Hill, 67,) the same point came up, and Mr. Justice Bronson acquiesced in the doctrine of *Jackson* v. *Crafts*—saying, however, "that it was a decided departure from the old law." But in *Post* v. *Arnot*, (S. C. 2 Denio, 344,) the point was made again. Several Senators delivered opinions condemning the doctrine of Jackson and Crafts, Mr. Senator Johnson among them, whose reasoning was addressed to show that Mr. Justice Woodworth had misapprehended the doctrine in Bacon and Viner, upon which, in great part, he predicated his opinion in *Jackson* v. *Crafts*. Although the question was not precisely the same as in the case of Jackson and Crafts—the point being as to the effect of a tender after a sale under decree of foreclosure—yet that case is a strong authority for holding the decision in 18 Johns. to be erroneous. *Post* v. *Arnot* reverses the judgment of the Supreme Court in 2 Denio. It may therefore be set down as certain that the case of *Jackson* v. *Crafts* is, as mere authority, so shaken, if not overruled, as to be of little or no weight in this discussion. The case in 21 Wend. though apparently affirming that in 18 Johns. is shown not necessarily to have involved the principle held in the latter case.

In *Merritt* v. *Lambert*, (7 Paige, 344,) Chancellor Walworth clearly and ably reviews the case of Jackson and Crafts, and exposes the error upon which the opinion of the Court rests.

Authorities maintaining the opposite doctrine to that held in 18 Johns. are numerous. (*Maynard* v. *Hunt*, 5 Pick. 242; *Crosby* v. *Chase*, 17 Maine, 371; 3 Mass. 559; 18 Id. 419.)

The rule is the same in England. In *Horner* v. *Priestly*, (21 Eng. L. & E. R. 497,) *held*, that the mortgagees were entitled to a decree for account of the principal, interest, and costs; and that after tender, if the principal did not appear to be lying idle, the interest must be continued to the time of taking the account, and that if the sum tendered did not amount to the sum due, the plaintiff must pay the costs; but if it exceeded the amount found due, the defendants must pay the same.

The proposition stands as clear for the Respondent upon its equity as upon authority. The debtor is as much in default for not paying when the debt is due as the creditor is in default for not receiving the money afterward when offered. It would be very harsh to hold that the debt is lost—the general effect of losing the security—by a mere refusal at a particular moment to receive it—that refusal induced, too, as it might be, by a variety of circumstances morally excusing it, or at least, not grossly violative of any positive duty, and productive of little or no injury to any one. We think therefore that the tender was not effectual to discharge the lien.

The next question is as to amount. The decree is for interest at the agreed rate in the note, from the time of the notice of the assignment of the Davis bond and mortgage to the plaintiff. It has been seen that the lease provided for the extinguishment of the interest, or was the consideration for such extinguishment. But the term of the lease had expired before this notification, and, indeed, the whole interest of the lessor, Castro, had before that time passed to other hands. Conceding that the plaintiff is bound by this agreement, as to the lease and as to the interest, Davis and Provizza could not, after the assignment, especially after notice of it to these parties, continue after the expiration of the lease to occupy the premises, and thus, in effect, make a new contract, which bound the plaintiff, the assignee of the bond, and prevent her from enforcing the contract according to its terms. If the mere remaining in possession of a part of the leased premises is to be adjudged a renewal of the lease upon its original terms, it is difficult to see how this renewal could be implied or take effect after both the parties to the lease had parted with all their interest in the subject matter of the lease and the consideration for it.

Several other points are made, but they are more technical than sound, and we have not time, in the pressure of business, to examine them in detail. To show that we have not overlooked them, we merely say:

1. That, as to the objection that no transfer has been shown from Provizza to Davis, it does sufficiently appear that Davis advanced the money, and on settlement with Provizza, it was agreed that Davis was the owner of the debt, and that Provizza assents to this arrangement, and no one else has any interest in disputing the fact—the decree being a complete protection to the other parties, as Povizza is a party.

2. That there is no proof of collusion between Tewksbury and the plaintiff in the record.

3. That this whole tract, embraced within the mortgage, being at the time of the mortgage subject to the debt and lien, it is imposssible to apportion the debt among the several holders or claimants who subsequently acquired interests in the land, they having so acquired these interests at the same time. The rule invoked is absolutely impracticable, and would lead to endless confusion. If there be any rule of equitable apportionment in this instance, the record fails to give us the facts upon which we could apply it.

Decree affirmed.