## WILLIAM HAYES *v.* ISAAC S. JOSEPHI.

DISCHARGE OF SURETIES ON UNDERTAKING.—If the defendant obtains an order for the release of property attached in the action by delivering to the Court or Judge an undertaking, executed by sureties, conditioned to pay the plaintiff any judgment he may recover in the action, and the property is thereupon released: whenever the liability of the sureties is fixed by the rendition of a judgment in favor of the plaintiffs, the sureties have a right to tender the plaintiff the full amount of the judgment, and if he refuses to receive the same, the sureties are discharged from their obligation on the undertaking.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*John B. Felton*, for Appellant.

The simple doctrine contended for is, that a surety is discharged by a tender of the amount of the debt to the creditor, even though the creditor refuse to receive it.

On principle, this must be so. In the first place, the surety has, by tendering the money, done all that he contracted to do. He did not contract that the creditor should receive the money; he only contracted to put the creditor in a position to receive the money—and this he has done. He has fully discharged every moral or legal obligation incurred by him.

In the second place, the contract of the surety is to pay the debt of another, and that other becomes, when the surety pays his debt, a debtor to the surety, who is immediately entitled to sue him. Of course, it is a part of this contract, that the surety shall have the right to pay the debt at any time, in order to sue the principal debtor. If the creditor refuses to receive the money, the surety is just as much prevented from having his legal remedy, as if the creditor had given time to his principal debtor.

The authorities are all clear to the point, that the surety has no recourse against the principal until after he has paid the debt. And it is clear that if, under the circumstances of this case, after the tender by Josephi, Josephi had sued Lewis,

his principal debtor, Lewis could have recovered on the ground that Josephi had never paid anything to his use and *non constat*, that he ever would be obliged to. (See *Shepard* v. *Ogden*, 2 Scammon, 260; *The Hampshire Manufacturers' Bank* v. *David P. Billings, Administrator*, 17 Pick. 87; 6 Bacon's Abr. Tender H, 2; *Harbert* v. *Dumont*, 3 Indiana, 346.)

In the case of *Baker* v. *Briggs*, 8 Pick, 121, it was held that where a creditor had by mistake represented to the surety that the debt was paid, the surety was discharged.

This case also goes much further than the case at bar. No injury was shown to the surety. He had not tendered the money. He had lost no legal right. But the mere fact that he was given to understand that the debt was paid, discharged him. (See, also, *Commonwealth* v. *Vanderslice*, 8 Serg. & Rawle, 457; *Leichtenthaler* v. *Thompson*, 13 Serg. & Rawle, 157.)

The authorities are clear to the point that the slightest extension, even for a day, or an hour, discharges the surety. In this case there must be a delay, greater or less, according to circumstances. It may be for a week, or it may be for an hour. But we have found no authority to the point that a delay must, in order to discharge a surety, be longer or shorter.

But even this tender into Court would not be a payment to the plaintiff, after he had refused it, such as to give the surety a right at law against the debtor. The debtor might set up still that his money had not been paid to plaintiff; that plaintiff had refused it; that it never had come into plaintiff's hands. The authorities are clear that such a payment would not operate as an assignment of the judgment, so that the surety would have no right to use that remedy. Evidently, no one can force a man to accept money who will not take it, and the only contract of the surety is to pay to the plaintiff. If plaintiff refuses to take the money out of Court, would not the surety have a right to withdraw it? Whose money would it be until accepted? Evidently not plaintiff's, for he has refused to receive it; nor the debtor's. It is still the surety's. And the debtor might set up that the surety had never paid any-

thing on his account; that he had only tendered it; that it might never be accepted.

*S. M. Wilson*, and *J. P. Hoge*, for Respondent.

"A tender does not *bar* or *extinguish* the *debt*, for the debtor is still liable to pay it whenever he is required to do so." (Chitty on Con. 694; *Dixon* v. *Clark*, 5 C. B. 365–377; *Waistell* v. *Atkinson*, 3 Bing. 290.)

But it is urged that "the contract of the surety is to pay the debt of another, and that other becomes, when the surety pays the debt, a debtor to the surety—who is immediately entitled to sue him;" that the refusal to receive the money prevents this remedy, and that therefore the surety should be discharged.

It might be a sufficient answer to this to say, that a surety has several remedies. The books are full of cases where the remedies of a surety are spoken of and distinctly specified. The subject is elaborately treated, not only in the reported cases, but in the text books.

The same reasoning resorted to by the learned counsel for the appellant in this respect, has been often before resorted to on the subject of the failure of a creditor to sue a solvent principal, when requested by the surety and when subsequently the principal has become insolvent. The cases of *Pain* v. *Packard*, 13 Johns. 174, and *King* v. *Baldwin*, 17 Johns., are based on the same specious but unsound views. They were repudiated in New York, in *Herrick* v. *Borst*, 4 Hill, 650; and in California, in *Humphreys* v. *Crane et al.*, 5 Cal. 175; and in *Hartman* v. *Burlingame*, 9 Cal. 561.

When the creditor refused the tender, the surety had his remedy in a Court of equity to compel a recovery of the debtor.

"It is now considered as a settled rule (see the cases referred to in *King* v. *Baldwin*, 2 Johns. Ch. R. 562, and 3 Merivale, 579) that a surety may resort to chancery if he apprehends danger from the creditor's delay, and compel the credi-

68

tor to sue the principal debtor, though probably he must indemnify the creditor against the consequences of risk, delay, and expense." (*Hayes* v. *Ward*, 4 Johns. Ch. R. 132.)

See the numerous authorities cited and commented on in that case by Chancellor Kent; also, 1 Story's Eq. Juris. Sec. 639, and cases cited; *Nesbitt* v. *Smith*, 2 Bro. Ch. R. 682, and numerous cases collected in note *a*.

We may say of this defense here what was said by Mr. Justice Cowen, in *Herrick* v. *Borst*, 4 Hill, 171: "What principle such a defense could have found to stand on in any Court, it is difficult to see. *It introduces a new term into the creditor's contract.*"

If Josephi "apprehended danger from the creditor's delay," why did he not resort to his remedy to compel an action and recovery? His defense shows that the debtor was not only solvent, but that he was here within the jurisdiction of the Court. Having himself waited until insolvency took place, can he visit the loss on the creditor?

In all cases where sureties are discharged by reason of some act of the creditor, they are discharged independently of the injury which the act may have caused.

Where the creditor gives time to the principal beyond the terms of the contract, that act of the creditor discharges the surety, without regard to the result—it discharges him even when at the termination of the new credit the principal debtor still remains solvent. It is like the case of failure to make demand of an indorsed promissory note, or neglect to give notice of demand and non-payment. The indorser is discharged though he may not in fact have suffered the least injury. The allegation of *the result* of the refusal to accept the tender, is therefore without any legal or logical force whatever, for the defense must be determined upon the act of the creditor, independently of the result. The legal influence which a tender exerts has been already shown, as well as the remedies of the surety in a Court of chancery.

The surety has a remedy under section five hundred and twenty-seven of the Practice Act, which expressly provides

that an action may be brought " against two or more persons, for the purpose of compelling one to satisfy a debt due to the other, for which the plaintiff is bound as security."

So also under section two hundred and eight of the Practice Act the money might have been paid into Court, and the Court would have ordered satisfaction of the judgment to have been entered.

It will therefore be seen, that it was not in the power of the creditor to cause any loss to the sureties, for notwithstanding his refusal, they surely had ample remedies. If he neglected those remedies until his chance for indemnity is gone, he cannot visit the result of his neglect on the creditor—he cannot ask that the debt due from him to the creditor shall be forfeited.

It will be noticed that the action is brought upon the written undertaking of Josephi and Reese, in which Lewis did not join. As between Lewis and the signers of the undertaking, there might have been the relation of principal and surety, but as between the plaintiff, Maguire, and Josephi and Reese, the two latter were principals. By the terms of the undertaking, they do not agree to pay if Lewis does not. They do not guaranty the payment. They absolutely and for themselves, and primarily promise to pay " to plaintiff upon demand the amount of the said judgment," etc.

It is precisely like an undertaking on appeal, and "an undertaking on appeal is an independent contract on the part of the sureties, in which it is not necessary that the appellants should unite." (*Curtis* v. *Rickett et al.* 9 Cal. 38.)

It is plain that the appellant is a principal as to the respondent—Lewis would not be a proper party to this suit. Were he joined, and it were alleged in the complaint that he is principal and Josephi a surety, it would be a misjoinder for which a demurrer would lie, and the matter would likewise be stricken out as irrelevant.

That Josephi and Reese are principals on the undertaking so far as the respondent is concerned, though they may be sureties as between themselves and Lewis, see *Humphreys* v.

*Crane et al.* 5 Cal. 175; *Aud* v. *Magruder*, 10 Id. 288–9; *Hunt* v. *Adams*, 5 Mass. 361; *United States* v. *Cushman*, 2 Summer, 436; *Snydam* v. *Westfall*, 2 Denio, 204; *Hunt, Administrator* v. *Adams*, 6 Mass. 522.

We respectfully submit, that on principle and authority, the judgment below should be affirmed.

By the Court, SAWYER, J.

John Maguire sued H. M. Lewis, and attached his property. Lewis gave an undertaking in the sum of one thousand three hundred and thirty-four dollars, executed by defendant, Josephi, and one Michael Reese, as sureties, in pursuance of section one hundred and thirty seven of the Practice Act, and thereupon obtained an order releasing the goods from the attachment. On the 10th day of January, 1863, Maguire recovered judgment against Lewis for the sum of one thousand and four dollars and fifty-six cents debt, and one hundred and eight dollars and ninety-five cents costs, and the sureties thereby became liable, on their undertaking, to pay the judgment. The judgment and undertaking were assigned to plaintiff on the 7th of May, 1863. This action is brought upon the undertaking, to recover of Josephi the amount of the judgment and costs recovered against Lewis.

The answer alleges, as matter of defense, that on the 21st day of January, 1864, the defendant, Josephi, tendered to Maguire, and for him to the plaintiff, who was then Maguire's attorney, the sum of one thousand one hundred and twenty-one dollars, which was at that time the full amount of the judgment, interest and costs, in payment of said judgment, and that said Maguire then and there refused to receive it; that at the time of said tender said Lewis was solvent, and able to pay said judgment, and was within the jurisdiction of the Court; that if said Maguire had accepted said money, so tendered, the said defendant might have recovered from said Lewis, the amount, so offered to be paid on said judgment; that after the said tender, and before the commencement of

this suit, the said Lewis became wholly insolvent, and he has ever since been, and he still is insolvent and unable to pay said sum or any part thereof to said defendant, in case said defendant should now be compelled to pay the same; of all which plaintiff had notice before the assignment. By reason of the premises, defendant claims that he became discharged from all liability on his undertaking.

The Court refused to permit defendant to introduce evidence in support of said allegations contained in the answer, and, on motion of plaintiff, rendered judgment on the pleadings for one thousand three hundred and twelve dollars and twenty-nine cents, to all of which defendant excepted.

The question is whether the surety was discharged by the tender of the amount due on the judgment, and the refusal of Maguire to accept it, under the circumstances stated in the answer?

We think he was. No authority has been cited on either side—and we have not been able to find one—in which the precise point involved in this case was decided, or discussed. There can be no doubt that the contract is essentially one of surety. The defendant undertook, without any valuable consideration moving to himself, to answer upon certain contingencies for the debt of another. True, he undertook to pay the debt, upon the happening of the contingency, and in this sense it was his own contract—his own debt—and it became his duty to pay it; but so it is in every other case of suretyship. The rights of the parties must be determined upon the general principles of law applicable to contracts of sureties.

If the creditor enters into a valid agreement to extend the time of payment, without the assent of the surety, the surety is discharged. It varies the contract to the prejudice of the surety, for the reason that it "deprives the surety of the power of paying the debt, and immediately calling upon his principal." (*Huffman* v. *Hulbert*, 13 Wend. 376.) So, if without the assent of the surety, he makes a valid contract with the principal debtor not to sue, the surety will be discharged; for although this will not prevent the debtor from

at once paying the debt, and then calling upon the principal, or prevent the creditor from suing, yet, in the language of Lord Chancellor Truro, in *Owen* v. *Homan*, 3 Eng. L. and Eq. R. 112, the "liability to such action (an action for breach of the agreement not to sue) has a tendency to operate on, and to fetter the discretion of the creditor in determining whether to sue or not." Such a contract presents a motive to the creditor to violate his duty to the surety, to proceed promptly against the principal, and is itself a breach of duty, tending to the prejudice of the surety, which the law will not tolerate. (See also *Harbert* v. *Dumont*, 3 Ind. 346.)

So where the means of satisfying the debt subsequently come into the hands of the creditor, and he does not avail himself of such means, but parts with them without the knowledge or consent of the surety, the surety is discharged. (*Baker* v. *Briggs*, 8 Pick. 121; *Hayes* v. *Ward*, 4 John. Ch. 122; 8 Sergeant & Rawle, 457; 13 Serg. & Rawle, 157.) Under these authorities, certainly a tender by the *principal* debtor, and a refusal by the creditor to accept the money, would discharge the surety; but simply because the interests of the surety may be prejudiced by such refusal.

The discharge of the surety in the cases named rests on the principle, that it is the duty of the creditor, so far as he can, consistently with the security of his own rights, to protect the interests of the surety as well as his own. The law requires the creditor to act in the utmost good faith toward the surety, and will not permit him to do anything that will unnecessarily tend to prejudice his interests. The creditor will certainly not be permitted to place obstacles in the way of the surety, which tend to hinder him in the pursuit of such remedies as are guaranteed to him by the law. The surety is entitled to pay the debt, and thereby at once acquire the right to proceed against the principal. This is a right which the law gives him, and it is on the ground that he has this simple and efficient remedy, that it has been held in many States, that where the surety has requested the creditor to proceed against the principal debtor, and the creditor has

refused to do so, and afterward the debtor becomes insolvent, the surety is not thereby discharged. (Parson's Com. Law, 69.) The right of the surety to pay the debt and at once proceed against the principal, was recognized in this State in *Humphreys* v. *Crane*, 5 Cal. 173 ; *Hartman* v. *Burlingame*, 9 Cal. 561 ; *Whiting* v. *Clark*, 17 Cal. 410 ; and *Dane* v. *Corduan*, 24 Cal. 157.

If it is the legal right of the surety to pay the debt, and at once proceed against the principal debtor, it necessarily follows, that he is entitled to have the money accepted by the creditor, in order that he may proceed. It is the duty of the creditor to receive it, and a gross violation of duty and good faith on his part to refuse, thereby interposing an insurmountable obstacle in the way of the pursuit by the surety of his most prompt and efficient remedy.

In the language of appellant's counsel, " It is as much the right of the surety to pay as of the creditor to receive ; it is the duty of the surety to discharge the debt, but it is also the duty of the creditor to suffer it to be discharged." Upon payment to the creditor, the surety is entitled immediately to enforce payment from the principal, and the law imposes upon the creditor the obligation not to interpose any obstacle to the immediate exercise of this right. But without payment the surety cannot recover against the principal. If the creditor refuses to receive the money when tendered, he as effectually prevents the surety from promptly pursuing his most efficient remedy, as he would by entering into a valid contract with the debtor to extend the time of payment. The reason why a valid contract between the creditor and principal to extend the time of payment discharges the surety, is, as we have seen, because the creditor by his further contract places an obstacle in the way of prompt and efficient action on the part of the surety to protect his interest. The principle applies here with equal force. The obstacle in either case is insurmountable, and the obstruction is placed in the way of the remedy by the act of the creditor, and against the will of the surety.

It is no argument against the views taken, that the defend-

ant had another remedy under section five hundred and twenty-seven of the Practice Act, which authorizes an action to be brought "against two or more persons, for the purpose of compelling one to satisfy a debt due to the other, for which the plaintiff is bound as security." This remedy is more complicated, and less prompt and efficient. By paying the debt, the surety could, in a case like the one under consideration, at once take out an attachment, and thus secure himself against a solvent party. The circumstances of the debtor might require prompt action. An hour's delay might defeat the surety's purpose, and an attachment might be the only remedy adequate to the occasion. At all events, he is entitled to pursue any remedy which the law affords him without hindrance from the creditor.

In the case of the *New Hampshire Manufacturers' Bank* v. *Billings*, 17 Pick. 89, precisely the same defense was set up by special plea, as is relied on in this case. The counsel for plaintiff did not even demur to the plea as insufficient, but replied new matter in avoidance, to the effect that at the time of the tender a suit had been commenced against the principal debtor, and costs incurred, for which the surety was liable; and that he did not tender enough to cover the costs, nor offer to indemnify the creditor for costs in that suit; that the creditor offered to receive the money if the surety would also pay the costs and indemnify him, which the surety refused to do. There was a demurrer to the replication. The Court expressed no intimation that the plea of tender was not good, but assumed it to be so, and held the matter set up in the replication to be a sufficient answer thereto. The implication, so far as any arises out of the case, is, that the plea was regarded as good.

In the case of *Perre* v. *Castro*, 14 Cal. 519, cited by respondent to show that no such effect as is claimed follows a tender, the question was, whether a tender after what was formerly, in England, significantly called the law day of the mortgage, discharged the mortgage. The Court, in holding that it did not, after the passage " it would be very harsh to hold that

the debt is lost—the general effect of losing the security," cited by counsel, add the following: " by a mere refusal at a particular moment to receive it—that refusal induced, too, as it might be by a variety of circumstances morally excusing it, or at least, not grossly *violative of any positive duty,* and productive of little or no injury to any one." In the case we are now considering, taking the answer to be true, the refusal *was* " grossly violative of a positive duty," which will result, in all probability, in the loss of the entire amount, which the surety may be called upon to pay.

But even in *Perre* v. *Castro,* the well established rule at common law that a tender, *on the law day* discharges the mortgage, was not controverted. The reason why a tender *after* the law day, at common law, did not, in England, also discharge the mortgage, was, because the mortgage was a conveyance upon condition, and by a breach of the condition by non-payment upon the day, the conveyance became absolute, and nothing short of a reconveyance would revest the title in the mortgagor. The Court, in *Perre* v. *Castro,* gave another reason why it is inequitable that a tender after the law day should not discharge the mortgage, viz: " The debtor is as much in default for not paying when the debt is due, as the creditor is in default for not receiving the money afterward when offered."

In a very late case in New York, (*Kortright* v. *Cady,* 21 N. Y. 343,) this question has undergone a thorough re-examination, both upon principle and authority, and the Court there hold that in that State, a tender *after,* as well as *on,* the law day discharges the mortgage. And it was put upon the ground that, in New York, a mortgage is merely a security, and passes no title to the mortgagee, and a payment at any time discharges the mortgage, and no reconveyance is necessary to revest the title in the mortgagor; hence the reason for the distinction between payments *on,* and *after* the law day adopted in England does not operate in New York.

It is true that a tender by the *principal* debtor does not discharge the debt, and *he* is bound to keep his tender good, and

be ready to pay over the money which belongs to the creditor whenever the creditor calls for it. But, then, he loses nothing, and is only put to the slight inconvenience of keeping the money. But there are substantial reasons why a tender should operate as a discharge of a mortgage, or surety, which do not apply to the debtor personally. To continue a mortgage on foot after a tender, might tie up the mortgaged property and greatly embarrass the mortgagor in its full enjoyment, by preventing a sale or mortgage for other purposes, and thus great damage might result to him. So also in the case of a surety, a refusal to take the money when tendered might obstruct the surety in pursuing his remedy against the principal, and in addition to the small inconvenience of preserving the money for the creditor, result in its entire loss to the surety.

We think the Court erred in rejecting the evidence offered by the defendant, and in entering judgment on the pleadings.

Judgment reversed and cause remanded for further proceedings.

SHAFTER, J., concurring :

I concur in the reversal, without, however, fully accepting that portion of the general reasoning which relates to the effect of a tender to discharge a mortgage.