[L. A. No. 96.    Department Two.—March 24, 1896.]

ANDREW J. O'CONOR as RECEIVER, ETC. RESPONDENT, v. E. W. MORSE ET AL., DEFENDANTS, J. H. BRALY, APPELLANT.

ACCOMMODATION NOTE—COLLATERAL SECURITY—TENDER BY SURETY—INSOLVENCY OF CODEBTORS—EXONERATION FROM LIABILITY.—The makers of an accommodation note given as collateral security for the payment of the note of a principal debtor to a bank stand in the position of sureties for the principal debtor; and where one of them tendered payment of the principal debt to the bank, and asked for a transfer of the note for the purpose of suing the principal debtor and the other sureties, who were then solvent, the refusal of such tender by the bank, accompanied by a declaration that the bank preferred to keep the note, and make it out of the other parties, operated to exonerate the party making the tender from further liability in case of the subsequent insolvency of the principal debtor and of the other sureties.

ID.—DEPOSIT OF TENDER NOT REQUIRED—OBSTACLE OF CREDITOR TO REMEDY OF SURETY.—A surety tendering the amount of the debt for which he is surety, in order to enable him to pursue his remedy against his co-debtors, upon the refusal of the creditor to accept it, is not required

to keep the tender good, but he is exonerated as completely by its refusal, as if the creditor had, without his consent, extended the time of payment, there being the wrongful interposition of an obstacle to the remedy of the surety to protect his interest.

Id.—Offer of Evidence—Insolvency—Finding—Presumption upon Appeal.—Where the court finds as a fact without apparent objection that the surety making the tender offered to prove that the principal debtor and his codebtors were solvent when the tender was made and refused, and that subsequently they and each of them became insolvent, and have continuously since been insolvent, and the court excluded the offered evidence upon the ground that it was irrelevant, incompetent, and immaterial, to which ruling exception was taken, such finding cannot be disregarded as having no place in the record, and it must be assumed, for the purpose of appeal from the judgment by such surety, that the facts were as the appellant offered to prove them to be.

Appeal from a judgment of the Superior Court of San Diego County. George Puterbaugh, Judge.

*J. W. Hughes,* for Appellant.

As the note in suit was executed to be used and was used as collateral security, defendant Braly was only a surety and was released by the offer to pay. (*Montgomery* v. *Sayre,* 91 Cal. 207; Civ. Code, secs. 2819, 2840; *Hayes* v. *Josephi,* 26 Cal. 535; *Humphreys* v. *Crane,* 5 Cal. 173; *Hartman* v. *Burlingame,* 9 Cal. 561; *Whiting* v. *Clark,* 17 Cal. 410; *Dane* v. *Corduan,* 24 Cal. 157; 85 Am. Dec. 53; *Solomon* v. *Reese,* 34 Cal. 29; *Sharp* v. *Miller,* 57 Cal. 416; *Rucker* v. *Robinson,* 38 Mo. 154; 90 Am. Dec. 414; *King* v. *Baldwin,* 17 Johns. 384; 8 Am. Dec. 425; *Sneed* v. *White,* 3 J. J. Marsh. 525; 20 Am. Dec. 176, 177.)

*V. E. Shaw,* for Respondent.

Whatever relation as to each other the makers of the note in suit may have held, as to the payee, they were all principals. (Code Civ. Proc., secs. 1659; Civ. Code, secs. 2831, 2832; *Leeke* v. *Hancock,* 76 Cal. 130; *Harlan* v. *Ely,* 55 Cal. 340; *Chase* v *Evoy,* 58 Cal. 353; *Farmers' Nat. Gold Bank* v. *Stover,* 60 Cal. 387.)

Belcher, C.—This is an action upon a non-negotiable promissory note for thirteen hundred and eight dol-

lars and ninety-five cents, bearing interest at the rate of one per cent per month, compounding monthly.

The case was tried by the court without a jury and the findings were in substance as follows: On October 31, 1890, the defendants, E. W. Morse, C. E. Heath, and J. H. Braly, executed and delivered the said note to one F. W. Stewart, to be used as collateral security for his own note, to be given to the Consolidated National Bank of San Diego. Thereafter, Stewart executed his own non-negotiable note for the same sum to the said bank, and as collateral security for the payment thereof duly indorsed, assigned and delivered to the bank the said note. On the day of its date defendant Braly paid on said note one-third of the amount due thereon, to wit: Four hundred and thirty-six dollars and thirty-two cents. The interest on the note was paid up to October 30, 1891, but no other payments on account of interest or principal were ever made.

On May 11, 1893, the bank was still the owner and holder of the said note. On that day the defendant Braly, through his duly authorized agent, J. C. Braly, called at the bank and offered to pay the said note, but stated that he did not want it stamped "paid" upon its face, but wanted such an indorsement made as would show the amount paid, and that it had been paid by J. H. Braly. In answer to a question by the cashier as to what he intended to do with the note, he replied that he was instructed to turn it over to attorneys to bring suit on it. From what was said the cashier understood that he wanted the note so indorsed that J. H. Braly could sue upon it, and he referred the matter to Mr. Howard, the president of the bank, and stated to him that accepting payment "would result in a suit against Heath and Morse." Mr. Howard replied to the cashier, in the absence of Mr. Braly, "that is a matter we must consider." He further said that "the relations of Mr. Morse and Heath to the bank were such that the matter must be considered before suit could be allowed." The cashier then told Mr. Braly to call the next day, and at that

time or later the president stated to the cashier that he didn't care to have Mr. Stewart and Mr. Morse sued. Braly went back to the bank the next day, as requested, and Mr. Howard, the then president of the bank, stated to him "that they had concluded to hold the note and make it out of the other parties."

Defendant Braly offered to prove by defendants Morse and Heath that they were solvent at the time he offered to pay the bank, but that on the twenty-fifth day of August, 1893, they, and each of them, became insolvent and have continuously since been insolvent; which offered evidence the court excluded upon the ground that it was irrelevant, incompetent, and immaterial, to which ruling defendant Braly duly excepted.

And, as conclusions of law, the court found that the effect of the offer to pay, on May 11th, was to stop the running of interest and to release said defendant Braly from the obligation to pay attorney's fees, but that he was not released from his obligation to pay the note, and that plaintiff was entitled to judgment against the three defendants for the principal due on the note, with interest thereon to May 11, 1893, amounting to one thousand and sixty-eight dollars and twenty-five cents.

Judgment was accordingly so entered, from which the defendant Braly appeals on the judgment-roll alone.

The Civil Code, section 2831, declares a surety to be "one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor."

In *Montgomery* v. *Sayre*, 91 Cal. 206, the action was upon a promissory note given as collateral security under circumstances similar to those found here, and it was held that the maker of the note was, in law, a surety.

The note in suit was executed to be used as collateral security for the payment of Stewart's note, and was accepted and held by the bank as such collateral security.

The appellant must, therefore, be regarded as only a surety, and the question is, was he exonerated from liability on the note by the refusal of the bank to accept payment thereof, because it would result in a suit against the comakers, and "they had concluded to hold the note, and make it out of the other parties?"

"A surety is exonerated: 1. In like manner with a guarantor; 2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety, or inconsistent with his rights, or which lessens his security; or 3. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do." (Civ. Code, sec. 2840.)

In *Hayes* v. *Josephi*, 26 Cal. 535, the action was to recover from a surety on an undertaking, given for the release of an attachment, the amount of the judgment subsequently recovered. The defense was that subsequent to the recovery of the judgment the surety tendered to the creditor the full amount of the judgment and he refused to receive it, and that at that time the judgment debtor was solvent, but afterward, and before the commencement of the action, became, and ever since had been, wholly insolvent.

At the trial the court refused to admit evidence in support of the allegations of the answer, and gave judgment for the plaintiff on the pleadings. On appeal it was held that the offered evidence should have been admitted, and that if the facts alleged were established the surety was discharged from his obligation on the undertaking. In the opinion of the court rendered by Sawyer, J., it is said: "The law requires the creditor to act in the utmost good faith toward the surety, and will not permit him to do anything that will unnecessarily tend to prejudice his interests. The creditor will certainly not be permitted to place obstacles in the way of the surety, which tend to hinder him in the pursuit of such remedies as are guaranteed to him by the law. The surety is entitled to pay the debt, and thereby at once

acquire the right to proceed against the principal. . . . .
If it is the legal right of the surety to pay the debt, and
at once proceed against the principal debtor, it neces-
sarily follows that he is entitled to have the money ac-
cepted by the creditor in order that he may proceed.
It is the duty of the creditor to receive it, and a gross
violation of duty and good faith on his part to refuse,
thereby interposing an insurmountable obstacle in the
way of the pursuit by the surety of his most prompt
and efficient remedy. . . . . If the creditor refuses to
receive the money when tendered, he as effectually pre-
vents the surety from promptly pursuing his most
efficient remedy as he would by entering into a valid
contract with the debtor to extend the time of payment.
The reason why a valid contract between the creditor
and principal to extend the time of payment discharges
the surety is, as we have seen, because the creditor by
his further contract places an obstacle in the way of
prompt and efficient action on the part of the surety to
protect his interest. The principle applies here with
equal force."

In *Sharp* v. *Miller*, 57 Cal. 415, this court said: The
plaintiff "refused to accept the money which was offered.
Having tendered the money, the defendants, as sureties,
did all they contracted to do. The tender made, al-
though it was refused, was equivalent to a payment by
them. (*Solomon* v. *Reese*, 34 Cal. 36.) And by it they
were discharged from their obligation as sureties upon
the appeal bond. (*Hayes* v. *Josephi, supra.*)"

The note in suit was held by the bank as collateral
security, and appellant was liable thereon as principal
for one-third which he paid, and as cosurety with Morse
for one-third, and as cosurety with Heath for one-third.
(*Chipman* v. *Morrill*, 20 Cal. 136.) He had a right to
pay the balance due on the note, and to look to his co-
makers for their *pro rata* shares thereof. The bank re-
fused to accept the money because it did not want the
comakers sued. But this the bank had no right to do,

and, as said in *Hayes* v. *Josephi, supra,* the refusal was a gross violation of duty and good faith on its part.

It is objected, however, that it does not appear that appellant was prejudiced by the refusal, since there is nothing to show that Morse and Heath subsequently became insolvent, the finding to the effect that appellant offered to prove their solvency and subsequent insolvency, which evidence was excluded, having no place in the record.

It is true that findings should be of the ultimate facts, but this finding cannot be disregarded on the ground urged. It is found in the record, and, so far as appears, was made and accepted without objection on either side. It must be assumed, therefore, for the purposes of this appeal, that the facts were as appellant offered to prove them to be.

It is further objected that appellant was not discharged from liability on the note, because he did not comply with the provisions of section 1500 of the Civil Code, which reads as follows: "An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor with some bank of deposit within this state of good repute, and notice thereof is given to the creditor."

A similar objection was made and overruled in *Randol* v. *Tatum,* 98 Cal. 390. On page 395 it is said: "E. A. Billings did not, when plaintiff refused to receive her money in payment of rents, deposit the same, or any part of it, in a bank or elsewhere, in compliance with the provisions of section 1500 of the Civil Code." And, after a full discussion of the question, it is said at the close of the opinion: "Even if the obligation of defendants must be regarded as that of sureties for the payment of a debt, still I think the tender sufficient to discharge the sureties."

As the case is presented on the record here, we think it clearly appears that the appellant was exonerated from

liability on the note, and that the court erred in render-
ing judgment against him.

The judgment should be reversed and the cause re-
manded.

VANCLIEF, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the
judgment is reversed and the cause remanded.

McFARLAND, J., TEMPLE, J., HENSHAW, J.