F. E. CRANE V. THE RENVILLE STATE BANK, OF RENVILLE, MINNESOTA.

No. 14,535.    (85 Pac. 285.)

SYLLABUS BY THE COURT.

GUARANTY—*Tender of Payment by Guarantor—Release.* An offer by a guarantor to pay an overdue note if the holder wishes him to do so, accompanied by a display of a sufficient amount of money for the purpose, does not necessarily amount to such a tender of payment as will release him from liability, although the creditor says that he prefers the note to the cash, the transaction being prevented from having that effect by the fact that the offer is made contingent upon the creditor's desiring him to make the payment.

Error from Franklin district court; CHARLES A. SMART, judge. Opinion filed March 10, 1906. Affirmed.

*Deford & Deford,* for plaintiff in error.

*Pleasant & Pleasant,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: F. E. Crane sold to the Renville State Bank, of Renville, Minn., a number of notes, including two executed by John Ourada, for $125 and $75, respectively, giving a written guaranty of their payment. The notes against Ourada proved uncollectable and the bank sued Crane upon his guaranty, recovering a judgment, from which he prosecutes error. The court found that upon the failure of Ourada to pay the notes at maturity the bank wrote Crane stating that fact

and asking instructions, and that Crane answered directing that they be placed in judgment.

Complaint is made that these findings are not supported by any evidence. There was testimony that the bank wrote and mailed to Crane a letter of the substance indicated. Crane testified that he had no recollection of receiving it. Nearly two months after its date he wrote to the bank saying: "Put that note into judgment. I have been away from home and that is the reason you have not heard from me." The whole question, so far as this assignment of error is concerned, is whether the court was justified in regarding Crane's letter as an answer to that of the bank. The circumstance that it used the phrase "that note" instead of "those notes" is of but little force, and certainly is not conclusive against the theory that the subject-matter of the communication was the Ourada indebtedness. We think the view of the court has abundant support.

The substantial defense interposed by Crane is based upon the contention that in virtue of a conversation between himself and a representative of the bank he was relieved of all liability and the bank elected to look exclusively to Ourada for the collection of the notes. This conversation took place upon the occasion of the bank's paying some $800 to Crane in another matter, and was, in full, as follows:

Crane: "Tim, how about the last bunch of paper I sold you; have you looked it up?"

Banker: "Yes, I have; it is first class; it is all first class except that fellow over here, Ourada. He has 640 acres of land, but he is trying to get behind his wife on that proposition; but he can't do that with me. . . ."

Crane: "Now, on that other contract of ours, Tim, I will take that paper up and pay you the money, if you want it, because I am here, and it will cost me only two or three days' time to go over there and get the matter fixed up while I am here, and I don't want to be annoyed with it after I am gone."

Banker: "No, I would rather have the note than have the money."

Crane: "Well, we have the money right here now on the table; take out the amount if you would rather have the money than the notes, because I don't want to be annoyed with it after I get away from here."

Banker: "No; I will make him pay it; . . . [Ourada] can't get behind that paper, because I will follow him to the end of the earth. I would rather have the note than have the money. . . . I will make him pay it; he can't get behind his wife, with 640 acres of land; I would rather have the note than the money."

It is claimed that this transaction amounted to a perfect tender of payment by the guarantor, and its refusal by the creditor, and that therefore Crane stood from that moment discharged of all liability. An argument is made against this contention based upon the fact that at this time only one of the notes was due. It is argued that no tender could be made upon the note which had not matured, although it drew interest only after maturity, and that an effective tender as to the past-due note could only be made by a separate offer to pay that one alone. Without attempting to pass upon the force of this suggestion, we shall assume that, irrespective of the maturity of the paper, Crane was privileged to take it up at any time.

The question to be determined, then, is whether the conversation already detailed amounted to a tender. We do not think it necessarily had that effect. It certainly came very near doing so, but fell just short of accomplishment. The gap was not wide, but it was sufficient to defeat that result. "A tender is an offer by a debtor, or other person who is under an obligation, to pay such debt or perform such obligation, the actual payment or performance being prevented by the refusal of the creditor or person entitled to performance to accept the same." (28 A. & E. Encycl. of L. 4.) Here there was no definite offer to pay on the one hand and refusal to accept on the other. The obligor indicated his readiness to pay if the obligee desired it—not

otherwise. The obligee did not really refuse to accept payment. He merely indicated that he was indifferent. For some reason sufficient to himself he even appeared to prefer the note to the money, but he did not say that he preferred the note without Crane's guaranty back of it to the money, and he did not actually refuse to accept payment then and there. At this stage of the proceedings the only controversy between the parties appears to have been which could show the other the greater courtesy in the matter, each seeming to defer to the other's wishes. The offer made by Crane did not purport to be for his own protection, although that feature of the matter was incidentally alluded to. It professed to be for the accommodation of the bank, and its acceptance was in express terms left to the bank's option. There was no such explicit demand that the bank should either accept the money or definitely release Crane from further obligation as the banker had a right to expect if that was what was in the mind of the guarantor. The case is in some respects similar to *Clark v. Sickler,* 64 N. Y. 231, 21 Am. Rep. 606. The first paragraph of the syllabus in that case reads:

"An offer upon the part of a principal debtor to pay, and an omission so to do because of a request of the creditor that he retain the money, and the subsequent insolvency of the principal, do not discharge a surety."

In the opinion it was said:

"It is quite evident that the creditor had no idea of discharging the surety. He did not prevent the payment of the note. He did not refuse to receive the money. He only expressed a desire that it should not be paid." (Page 235.)

Where a principal offers to pay a debt and payment is not made by reason of the conduct of the creditor there is good ground for holding that the surety should be deemed discharged, upon the theory that the non-payment results from a failure of the creditor to use due diligence to make collection from the principal and thereby protect the surety. But where, as in the pres-

ent case, the offer to pay is made by the surety, there is no room for the application of this doctrine. It is true that a surety may be released by the refusal to accept payment from him when he makes a good tender, but this is for an entirely different reason, namely, because such refusal interposes an insurmountable obstacle in the way of his pursuit of his remedy against his principal. (*Hayes v. Josephi*, 26 Cal. 535; *O'Conor v. Braly*, 112 Cal. 31, 44 Pac. 305, 53 Am. St. Rep. 155.) In the one case the release of the surety may be accomplished by the creditor's mere neglect to take advantage of a chance to take the money when he can get it, but in the other it can result only from his positive refusal to accept it when the surety makes tender and demands such acceptance as a right. Here the bank missed no opportunity for getting the money from Ourada, and it placed no insurmountable obstacle in the way of Crane's attempting to force the collection himself.

The court was warranted in holding Crane liable for the expenses of the proceedings against Ourada, as well as for the amount of the debt, by the consideration that they were taken by his direction. The judgment is affirmed.

All the Justices concurring.