[No. B128736. Second Dist., Div. Six. Nov. 30, 1999.]

FM CONNER et al., Plaintiffs, Cross-defendants and Appellants, v. BILLIE G. CONNER et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

Conner & Bak, Tommy A. Conner and Angelo F. Piersanti for Plaintiffs, Cross-defendants and Appellants.

Bleuel & Muirhead and Michael L. Muirhead for Defendants, Cross-complainants and Respondents.

## OPINION

YEGAN, J.—This case illustrates the venerable legal maxim of jurisprudence: "He who takes the benefit must bear the burden." (Civ. Code, § 3521.) Appellant took the benefit of the bargain he made 10 years ago and now asks us to erase his name from a personally guaranteed note. We will not do so.[1]

FM Conner and Cheryl A. Conner (FM) appeal from a $73,954.08 judgment entered in favor of respondents Billie G. Conner and Lola Fern Conner (Billie) on a promissory note. FM contends that the trial court erroneously found that Billie's conduct as a creditor in a bankruptcy proceeding did not exonerate FM's personal guarantee of the note. We affirm.

### Facts and Procedural History

FM and Billie are brothers. They founded Magness Machine Co., Inc. (Magness), an Oxnard metal machining business. In 1990, Billie sold his stock to FM, Tommy Conner (FM's son), and Magness. Magness gave Billie a $162,500 promissory note that provided for a 1998 balloon payment. FM personally guaranteed the note and executed a deed of trust on the real property in Oxnard as security.

Magness filed a chapter 11 bankruptcy petition in November 1996. The balance due on the $162,500 note was $48,380.08 but subject to an offset for preference payments (11 U.S.C. § 547(b)(4)(B)) because Magness paid Billie approximately $32,000 on the note within 12 months of the filing of the bankruptcy petition. Billie was an insider and was required to repay the money to the bankruptcy trustee.[2]

Billie demanded that FM pay the balance due on the note in addition to the $32,000 given to the bankruptcy trustee. FM contended that Billie had to exhaust his remedies against Magness pursuant to Civil Code section 2845

---

[1]A bankruptcy court has the power to restructure debt, alter priority among creditors, and relieve the debtor of personally guaranteed notes. Appellant, however, is not a debtor in bankruptcy and we are not a bankruptcy court.

[2]The bankruptcy trustee may reach transfers from the debtor to insiders within one year of the date the bankruptcy petition is filed. (11 U.S.C. § 547(b)(4)(B).) An "insider" includes relatives, partners, directors, officers or affiliates of the debtor. (Secured Transactions in Cal. Commercial Law Practice (Cont.Ed.Bar 1986) § 4.43, p. 223.)

which provides: "A surety may require the creditor . . . to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue, and which would lighten the surety's burden; and if the creditor neglects to do so, the surety is exonerated to the extent to which the surety is thereby prejudiced."

In 1997, Magness filed a first amended reorganization plan in the bankruptcy court providing that Fab-Mac, a limited liability company, would purchase Magness for $100. Billie objected to the plan. FM filed the instant state court action to declare the rights and liabilities of the parties.

Settlement discussions faltered after Magness filed a second amended reorganization plan. Billie believed the reorganization plan was a fraud. To resolve the dispute with Billie, Magness offered to waive the preference claim if Billie withdrew his creditor's claim on the note. Billie, however, feared that withdrawal of the creditor's claim would exonerate FM's personal guarantee.

Magness amended its settlement offer to provide that withdrawal of the creditor's claim would not affect FM's obligation as a guarantor. FM orally agreed to the settlement terms but failed to sign a written acknowledgment as requested by Billie. The settlement never came to fruition.

The bankruptcy court approved the reorganization plan. Fab-Mac, Magness's successor in interest, issued a $46,317.44 promissory note to Billie that deferred payment until 2003. Billie rejected the note and requested that FM make him whole as required by the personal guarantee.

Under the terms of the reorganization plan, Billie was also required to return $32,055.53 in preference payments. Billie settled the preference claim for $25,574, increasing the amount due on the guarantee to $73,954.08. He filed a cross-complaint in the state court action to enforce the personal guarantee.

The matter was tried to the court, which found: "Nothing Billie did or failed to do in the bankruptcy proceeding rose to the level of prejudicing FM or exonerating them on their guarantee." The court concluded that FM owed Billie $73,954.08 plus interest and attorney's fees, and ordered the sale of FM's interest in the Oxnard property to satisfy the money judgment.

*Alleged Discharge of Surety*

FM contends that the personal guarantee was discharged when Billie rejected Magness's settlement offer to waive the preference claim. FM

claims that Billie's rejection of the settlement offer altered his obligation as a surety.[3] We disagree. In reality, Billie's acceptance of the settlement offer would have extinguished FM's personal guarantee. By rejecting the settlement offer, Billie left the personal guarantee just as it was bargained for 10 years earlier.

■ It is well settled that a creditor must act in good faith and do nothing to prejudice the interests of the guarantor. (See *Massachusetts Bonding etc. Co. v. Osborne* (1965) 233 Cal.App.2d 648, 662 [43 Cal.Rptr. 761].) The rights of a guarantor are based on suretyship law. (Civ. Code, § 2787; *Bloom v. Bender* (1957) 48 Cal.2d 793, 797 [313 P.2d 568].) "Section 2819 exonerates a surety if the creditor, without the surety's consent, alters the 'original obligation' or impairs or suspends the creditor's 'remedies or rights' against the debtor. The statute serves to release a guarantor whose subrogation rights against the debtor are impaired. [¶] . . . A creditor must not impair a surety's remedies against the principal debtor. [Citation.]" (*Bennett v. Leatherby* (1992) 3 Cal.App.4th 449, 452 [4 Cal.Rptr.2d 340].)

■ The trial court found that Magness and Fab-Mac "were in desperate financial circumstances. The idea that BILLIE could have obtained a better deal for himself (and potentially for FM as the guarantor) is without foundation in either the evidence or in common sense. Magness had been poorly served by the decline in the aerospace industry as well as the conduct of certain of its officers/directors, and had little real hope for any financial recovery. The Fab-Mac notes were issued on January 4, 1998. Before the month was out, BILLIE notified FM that he wanted nothing to do with them, and was willing to give them to FM in exchange for FM's payment on the guarantee. . . . Likewise, when FAB-MAC issued BILLIE an additional note in June, 1998 representing the $25,574.00 BILLIE had to return to the bankruptcy estate to resolve the preference payment claim against him, BILLIE once again properly gave FM written notice of his intention to subrogate his rights in the additional note to FM in exchange for FM's payment on the guarantee."

The evidence supports the finding that Billie did not breach his duty to protect FM's rights as a surety. Billie reasonably believed that withdrawal of the creditor's claim would discharge Magness's loan obligation. (11 U.S.C. § 524.) His theory was that if the original loan obligation was altered or

---

[3]Civil Code section 2819 provides: "A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, [are] in any way impaired or suspended. . . ."

discharged, the guarantee would also be discharged. (Civ. Code, §§ 2809, 2819; 59 Cal.Jur. (3d ed. 1980) Suretyship and Guarantee, § 59, p. 111; compare *Bloom* v. *Bender, supra,* 48 Cal.2d 793, 802 with *Bridge* v. *Connecticut Mut. Life Ins. Co.* (1914) 167 Cal. 774, 782-783 [141 P. 375].)

"[I]t is the duty of the creditor, so far as he can, *consistently with the security of his own rights,* to protect the interests of the surety *as well as his own.*" (*Hayes* v. *Josephi* (1864) 26 Cal. 535, 542, italics added.) Billie was not required to waive his creditor's claim if it would jeopardize enforcement of FM's personal guarantee. Magness warned Billie that the creditor's claim would be disallowed if he did not return the preference payments.

The trial court found that "[t]he equities clearly lie in BILLIE's favor." The court explained that "FM had a secured claim, unsecured claims and a contingent claim against Magness in the bankruptcy proceedings. FM filed no objections to his treatment under the reorganization plan or to any conduct by BILLIE in relation to the plan. Silence on FM's part in the bankruptcy proceedings can be viewed as consent to BILLIE's conduct and implied approval of the reorganization plan. The court specifically finds that under the circumstances BILLIE's conduct in the bankruptcy proceedings was reasonable. [¶] . . . FM and CHERYL CONNER's obligations under their personal guarantee remain unchanged notwithstanding anything that occurred in [the] bankruptcy proceedings."

Substantial evidence supported the finding that Billie acted reasonably in conditioning the settlement on FM's written acknowledgment of the continuing personal guarantee. In *Durgin* v. *Kaplan* (1968) 68 Cal.2d 81 [65 Cal.Rptr. 158, 436 P.2d 70], the creditor participated in the debtor's bankruptcy reorganization and received stock. Years later he sued on the guarantee that secured the original debt. The court held that the creditor had made an election of remedies and was estopped from enforcing the guarantee. *(Id.,* at p. 91.)

Unlike the creditor in *Durgin,* Billie objected to the reorganization plan and gave notice that he would look to FM for payment. The trial court found that "BILLIE was directed by persons acting on behalf of FM to pursue his demand in the bankruptcy action. . . . Billie did just that. He engaged bankruptcy counsel and objected to the initial plan of reorganization as being 'speculative' in its assumptions regarding Magness' abilities to financially resurrect itself and pay its creditors. At the same time, BILLIE never wavered from his demand on the guarantor that he be paid in full on the note, including all interest from October 1, 1996."

We reject the argument that Billie was required to subordinate his rights as a creditor to better FM's position as a guarantor. (*Hayes* v. *Josephi, supra,*

26 Cal. 535, 542.) Based on FM's construction of Civil Code section 2819, the Magness bankruptcy created a "Catch 22" situation. If Billie accepted a new note under the reorganization plan, FM's personal guarantee would be exonerated. (*Bridge* v. *Connecticut, Mut. Life Ins. Co,. supra,* 167 Cal. 774, 752-753.) If Billie failed to return the preference payments, the creditor's claim would be disallowed and FM's guarantee would be exonerated. (Civ. Code, § 2845, *ante*, pp. 648-649.) Billie recognized the dilemma and insisted that FM agree in writing to the continuing vitality of the personal guarantee. The request did not impair FM's rights as a guarantor. (*Bloom* v. *Bender, supra,* 48 Cal.2d 793, 802-803.)

The trial court reasonably concluded that Billie was not estopped from enforcing the personal guarantee. "The purpose of the law of contracts is to protect the reasonable expectations of the parties." (*Ben-Zvi* v. *Edmar Co.* (1995) 40 Cal.App.4th 468, 475 [47 Cal.Rptr.2d 12].) To judicially erase FM's signature from the personal guarantee would be a windfall to him and unfair to Billie. The trial court's ruling protects the reasonable expectations of the parties when they entered into the 1990 agreement.

The judgment is affirmed. Billie is awarded costs on appeal. In addition, Billie is awarded reasonable attorney's fees on appeal in an amount to be determined on noticed motion filed in the superior court.

Gilbert, P. J., and Coffee, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 15, 2000.