Filed 08/11/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KEVIN A. COLES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BARNEY G. GLASER et al.,<br><br>    Defendants and Appellants. | A145642<br><br>(Marin County<br>Super. Ct. No. CIV1100240) |

Plaintiff Kevin Coles filed this action against defendants Barney Glaser and Fred Taylor for allegedly breaching a settlement agreement the parties had entered in a prior lawsuit. Coles brought the prior suit to recover an overdue loan that he had extended to a real estate investment company, Cascade Acceptance Corporation (Cascade), and that was guaranteed by Glaser and Taylor. That case was settled when Cascade ostensibly paid off the loan, and Coles, in return, executed a release. But shortly after the settlement, Cascade filed for bankruptcy, and Coles was forced to surrender most of the settlement proceeds to the bankruptcy trustee as a preferential payment. The trial court in this case found that Glaser and Taylor had breached the settlement agreement, and it entered judgment in favor of Coles. We affirm, holding that a debt of a contractual co-obligor is not extinguished by another co-obligor's pre-bankruptcy payment to a creditor that is later determined to be a bankruptcy preference.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In 2005, Coles lent money to Cascade, and defendants guaranteed the loan's repayment. In early 2009, Glaser—Cascade's president and chairman of the board—

1

informed Coles that Cascade could not repay him in the foreseeable future. Coles then sued Cascade, Glaser, and Taylor—Cascade's vice president—seeking to recover the amount of the loan and other damages. Shortly after the suit was filed, Cascade wired $308,783.85 to Coles's bank account to pay off the loan, and the parties quickly entered into a settlement agreement. The agreement required Cascade, Glaser, and Taylor to pay off the loan, acknowledged that Cascade had transferred the full amount of the outstanding obligation to Coles, and included a release of claims by Coles.[1] The agreement was signed by Glaser on behalf of Cascade, and by Glaser and Taylor individually. The case was soon dismissed.

A week after the case was dismissed, Cascade filed for bankruptcy. Months later, the bankruptcy trustee demanded that Coles surrender the settlement proceeds he had received from Cascade as a voidable preferential payment under 11 U.S.C. § 547(b)(4)(B). Eventually, Coles and the trustee negotiated a compromise under which Coles surrendered $200,000 in cash and a promissory note to Coles issued by a Cascade affiliate.[2] We shall follow the usage of the trial court and parties by referring to Coles's surrender of these assets as the bankruptcy "clawback."

Coles filed a claim in the bankruptcy proceeding and received some distributions as a creditor. But he was left with a significant shortfall, which he sought to recover by bringing this lawsuit against Glaser and Taylor. The operative complaint asserted a cause

---

[1] Coles agreed "to release and does hereby release any claims of any kind against DEFENDANTS, . . . which either were or could have been asserted in the Action." The release discharged defendants and Cascade from any liability "arising from the Claim, except for obligations arising under this Compromise Settlement and Release Agreement."

[2] The trial court found that the note had a "purported" value of $78,923.58 but an actual value of $50,000.

of action for breach of contract based on the allegation that Glaser and Taylor violated the settlement agreement because Coles was not paid the full sum he was due.[3]

After a one-day bench trial on the breach of contract claim, the trial court ruled in Coles's favor. It found that Glaser and Taylor were jointly responsible with Cascade for payment of the full sum owed under the settlement agreement and that both were liable for the shortfall because Cascade's pre-bankruptcy payment was a legal nullity to the extent it was clawed back. The court ruled that because "Cascade's payment was clawed back, Defendants [could not] rely on Cascade's satisfaction of Defendants' contractual obligation." It explained that, "[a]s [a] matter of law, the payment that had been promised and purportedly delivered in connection with the settlement agreement does not exist. The 'clawback' effected a *nunc pro tunc* reversal of the payment that had been made. As a result of that reversal, Cascade and [defendants] did not perform that which [the] settlement agreement required, payment of the settlement funds. Further, [Coles's] release of his claims . . . was based on the payment that was subsequently clawed back by the bankruptcy trustee. The release was granted only in exchange for the payment that now has been revoked. [Coles] effectively by operation of law never received the payment and thus, the release is invalid or ineffective. The parties [were] put back in the position [they] were in at the time the payment was purportedly made, prior to the purported release." Based on its findings, the court entered a $207,515.82 judgment in favor of Coles.[4]

---

[3] Two other causes were also asserted, but they are not relevant to the issues on appeal. The first one was based on fraud, and it was dismissed with prejudice at trial. The second was based on common count, and the trial court found that it was moot in light of the court's finding that the settlement agreement was breached. In addition, Coles did not pursue his allegation that defendants breached the covenant of good faith and fair dealing.

[4] In calculating the amount of the judgment, the trial court accounted for two bankruptcy distributions that Coles had apparently received: one in the amount of $28,538, and another in the amount of $15,946.19. We need not resolve any disputes about the amount of the judgment because on appeal Glaser and Taylor challenge only their liability for the judgment, not its amount.

3

## II.
### DISCUSSION

Glaser and Taylor argue that the trial court erred in ruling that they breached the settlement agreement because Cascade paid the full amount due under the agreement and Coles released them from further liability. They argue that it is inconsequential that part of Cascade's payment was deemed a preference and clawed back for the benefit of the bankruptcy estate. As we shall explain, they are mistaken.

We review the decision of the trial court de novo where, as here, the facts are not in dispute and the appeal raises only questions of law. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800-801; see, e.g., *Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283, 288 [issues of contract interpretation reviewed de novo absent admission of extrinsic evidence]; *In re Chang* (9th Cir. 1998) 163 F.3d 1138, 1140 [applying de novo review in interpreting and applying a provision of the Bankruptcy Code].)

We begin our review by discussing voidable preferences in bankruptcy. Under 11 U.S.C. § 547(b), a bankruptcy trustee may seek to recover for the benefit of the bankruptcy estate payments a debtor made to a creditor before filing the bankruptcy petition. The "section gives the trustee the right to undo, in certain circumstances, transfers that were made during the 90 days prior to the bankruptcy filing. It is a broad grant of authority, allowing avoidance of transfers of interests of the debtor in property if five conditions are satisfied and unless an exception applies." (*In re Churchill Nut Co.* (Bankr. N.D.Cal. 2000) 251 B.R. 143, 148-149.) The statute serves two basic policies: it discourages a pre-bankruptcy race to the courthouse by creditors, and it facilitates equality in estate distribution among creditors. (*Union Bank v. Wolas* (1991) 502 U.S. 151, 154-155.) Recovering a payment as a preference "requires a finding that the debtor was insolvent when the payment was made and essentially treats the estate as if it were already created during the preference period. Since an insolvent debtor has no equity in that estate, the pre-petition payment was in fact made by the other creditors of the estate, not by the debtor." (*In re Hackney* (Bankr. N.D.Cal. 1988) 93 B.R. 213, 218.) In this

4

case, we are, of course, bound by the bankruptcy determination that the loan repayment to Coles was a preference, and the parties do not argue to the contrary. (See *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1163 ["California gives full faith and credit to a final order or judgment of a federal court," including in bankruptcy matters].)

Coles's breach of contract claim was brought against Glaser and Taylor not on the basis of their status as guarantors under the original note, but instead on the basis of their status as co-obligors under the settlement agreement. Much of the relevant authority in this area has developed in bankruptcy courts and discusses the liability of guarantors, rather than co-obligors, for pre-bankruptcy payments to creditors made by a bankrupt debtor that are later clawed back into the bankruptcy estate as a preference. This authority uniformly holds that guarantors remain liable to creditors for the debt reflected in these clawed-back payments. "[C]ourts have uniformly held that a payment of a debt that is later set aside as an avoidable preference does not discharge a guarantor of [its] obligation to repay that debt." (*Wallace Hardware Co., Inc. v. Abrams* (6th Cir. 2000) 223 F.3d 382, 408; see also *In re SNTL Corp.* (Bankr. 9th Cir. 2007) 380 B.R. 204, 213 ["the return of a preferential payment by a creditor generally revives the liability of a guarantor"]; *In re Robinson Bros. Drilling, Inc.* (10th Cir. 1993) 6 F.3d 701, 704 [courts "have recognized, without regard to any special guaranty language, that guarantors must make good on their guaranties following avoidance of payments previously made by their principal debtors"]; *In re Herman Cantor Corp.* (Bankr. E.D.Va. 1981) 15 B.R. 747, 750 ["Although a surety usually is discharged by payment of the debt, [the surety] continues to be liable if the payment constitutes a preference under the bankruptcy law"]; accord Restatement Third of Suretyship & Guaranty § 70.)

California authority is in agreement. In *Conner v. Conner* (1999) 76 Cal.App.4th 646 (*Conner*), one brother, FM, guaranteed the payment of a company's obligation under a promissory note to another brother, Billie. (*Id.* at p. 648.) The company filed for bankruptcy, and Billie was forced to surrender as preferences some of the payments he had received from the company. (*Ibid.*) During the bankruptcy proceedings, Billie

5

opposed a reorganization plan and declined to accept a settlement of his claim. (*Id.* at p. 649.)

FM sued in state court for declaratory relief. (*Conner*, *supra*, 76 Cal.App.4th at p. 649.) He argued that the guarantee could not be enforced because Billie had declined to settle his bankruptcy claim and thereby adversely affected FM's interest. (*Ibid*.) The Court of Appeal affirmed the trial court's determination that FM remained liable as a guarantor of the note, observing that "[b]y rejecting the settlement offer, Billie left the personal guarantee just as it was bargained for . . . years earlier." (*Id*. at p. 650.) The court held that to find the guarantee unenforceable would effectively "judicially erase FM's signature from the personal guarantee [and] would be a windfall to [FM] and unfair to Billie. The trial court's ruling protects the reasonable expectation of the parties when they entered into the [agreements that included the guarantee]." (*Id*. at p. 652.)

Glaser and Taylor argue that *Conner*, *supra*, 76 Cal.App.4th 646 does not control here because Coles's breach of contract claim is based not on their status as guarantors but instead on their status as co-signatories of the settlement agreement. They argue that their liability was extinguished when Cascade satisfied the joint obligation to pay the settlement amount. In doing so, they essentially argue that a guarantor's liability under a contractual guarantee for a payment later deemed to be a preference is different from a co-obligor's liability under a settlement agreement for such a payment. The trial court rejected this argument, finding no "significance in the distinction. The obligations of someone directly making a promise to pay are at least as strong as those of someone making a guarantee." We are in complete agreement with the court. (See *Wagner v. Giles* (Ky.Ct.App. 2006) 209 S.W.3d 489, 492 ["The fact that [the defendant] was a co-maker rather than a guarantor of the notes does not dictate a different result"].)

A party's obligation, whether under a guarantee or a settlement agreement, is contractual. The elements of a cause of action for breach of contract are: " '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.' " (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614.) Here, the parties agree that the

6

settlement agreement is a contract, that Coles performed his obligation under it by issuing the release, and that Coles suffered damages by not receiving the shortfall as a result of the clawback.

The only disputed element is whether Glaser and Taylor breached the agreement, and we agree with the trial court that they did. The agreement specifically defined the defendants in the previous lawsuit to include Glaser, Taylor, and Cascade, and it was signed, as we mentioned above, by all three. In exchange for Coles's release, the settlement required that those defendants "pay directly to [Coles] the sum of . . . []$308,783.85[], which sum was received by [Coles] from DEFENDANTS through inter-bank wire transfer." But this term was violated in at least two ways as a result of the clawback: the full amount of the obligation was not paid, and none of the three defendants paid the amount reflected in the clawback.

The full amount owed under the settlement agreement was not paid even if none of the parties was aware of that fact at the time the settlement agreement was entered. We agree with the trial court that Coles "effectively by operation of law never received . . . payment" to the extent of the clawback. "A preferential payment is deemed by law to be no payment at all." (*In re Herman Cantor Corp.*, *supra*, 15 B.R. at p. 750.) "Under the [Bankruptcy Code], a payment which is set aside as a preference is null and void, as if no payment had been made, and the parties are returned to the status quo ante." (*Wagner v. Giles*, *supra*, 209 S.W.3d at p. 491, italics omitted.)

Not only was the full amount not paid, but also the portion reflected in the clawback was not paid by any of the three defendants, including Cascade, as required by the agreement. True enough, Cascade ostensibly paid the full settlement sum at the time of the settlement. But, as a matter of law, the portion of the payment eventually clawed back was actually paid by Cascade's *creditors*, not by Cascade, once it was determined to be a preference, and those creditors had every right to have it surrendered to the bankruptcy estate for proper distribution. (See *In re Hackney*, *supra,* 93 B.R. at p. 218.) In short, Glaser and Taylor's insistence that "Cascade made the entire payment" is simply wrong as a matter of law.

7

" 'The purpose of the law of contracts is to protect the reasonable expectations of the parties.' " (*Citizens for Goleta Valley v. HT Santa Barbara* (2004) 117 Cal.App.4th 1073, 1076; Civ. Code, § 1636.)  No one suggests that the parties intended for Coles to provide a release regardless of whether he got paid.  The most that defendants intimate is that Coles may have known that Cascade was insolvent and near bankruptcy at the time the settlement agreement was reached.  In our view, any such knowledge has no bearing on whether defendants breached their contractual obligations.[5]  (See, e.g., *Wallace Hardware Co., Inc. v. Abrams*, *supra*, 223 F.3d at p. 408 [whether settlement is "binding [on guarantor] in spite of [debtor's] subsequent bankruptcy . . . turns purely on contract and bankruptcy principles, and not on the relative blameworthiness of the parties"].)

Having concluded that Glaser and Taylor breached the settlement agreement, we need not address their arguments based on the release, including their contention that Coles's breach of contract claim here is covered by the release as a claim "arising out of or connected with the [original] Claims" in the previous lawsuit.  Having failed to keep their end of the bargain, Glaser and Taylor are in no position to argue that the release, which Coles gave to keep his end of the bargain, bars Coles from recovering the damages he incurred as a result of their breach.

But on one related matter we disagree slightly with the trial court.  It determined that the release "is invalid or ineffective" as a result of Glaser and Taylor's breach. Although defendants cannot rely on the release to prevent Coles from asserting that the settlement agreement itself was breached, the release is not otherwise invalid.  A party to a contract has two different remedies when injured by a breach of contract:  the party may disaffirm the contract, treating it as rescinded, and recover damages resulting from the rescission, or, alternatively, may affirm the contract, treating it as repudiated, and recover

---

[5] We need not address Glaser's claim that certain exhibits related to Coles's knowledge of the bankruptcy were improperly admitted.  This claim is conditioned on our reversing the trial court's judgment, which we decline to do, and is forfeited in any event because it is unsupported by "reasoned argument and citation to authority." (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.)

8

damages.  (*Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1384.)  Here, Coles did not treat the contract as rescinded but instead affirmed it by seeking and obtaining the amount of the shortfall the clawback caused.  The release, therefore, remains a part of the unrescinded agreement and prevents Coles from pursuing any future claims that may be barred by it.

## III.
### DISPOSITION

The judgment is affirmed.  Coles is awarded his costs on appeal.

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Dondero, J.

*Coles v. Glaser* (A145642)

10

Trial Court:                                    Marin County Superior Court

Trial Judge:                                    Honorable Paul M. Haakenson

Counsel for Appellant Barney          Farmer Brownstein Jaeger LLP, William S. Farmer
G. Glaser:

Counsel for Appellant Fred W.         Bartko, Zankel, Bunzel & Miller, Marco Quazzo
Taylor: