Filed 3/24/26  Lawrence v. Swalley CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JULIA LAVAL LAWRENCE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TODD SWALLEY,<br><br>        Defendant and Respondent. | A174008<br><br>(Alameda County<br>Super. Ct. No. 23CV027934) |

A homeowner filed a one count form complaint for breach of contract against a contractor.  The contractor moved for summary judgment, which the trial court granted.  The trial court then denied a subsequent motion for reconsideration.  The homeowner, appellant Julia Laval Lawrence, appealed.  We find no error and affirm.  Lawrence's briefs fail to make any cogent argument supported by citation to pertinent legal authorities, and raise speculative claims without any basis in fact, resulting in the forfeiture of her claims on appeal.  Even if she had not forfeited her arguments, we would still affirm the judgment because Lawrence fails to raise a triable issue of fact supported by admissible evidence and has presented no new facts warranting reconsideration of the order granting summary judgment.  Accordingly, we affirm.

1

## BACKGROUND

This case has a complicated procedural history both in the trial court and on appeal. The record is replete with seemingly duplicate filings by both parties. Adding to this confusion, the trial court granted multiple continuances and permitted Lawrence to file multiple iterations of her opposition to summary judgment.

A. *The Project*

The following facts are undisputed. On or about July 17, 2019, Lawrence and Todd Swalley, who was doing business as TS Construction, entered into a contract for the renovation of Lawrence's home (the project). On or after July 17, 2019, Lawrence filed an application for a construction loan with Umpqua Bank (bank). Green Valley Structural (GVS) was listed as the contractor of record on the building permit. All change orders for the project were made by GVS. All payment invoices for the project came from GVS. At some point, GVS ceased working on the project and Lawrence discussed with TS Construction "what it would take to complete the job." Ultimately, Lawrence decided not to have TS Construction perform the work "because the price was too high."

B. *Litigation*

On February 16, 2023, Lawrence filed a Judicial Council form complaint, alleging a single count of breach of contract against "Swalley/TJ [*sic*] Construction."[1] Lawrence alleged Swalley/TS Construction "was paid for work not completed." Lawrence alleged she entered a contract with Swalley/TS Construction on June 24, 2019. However, the contract attached to the complaint is signed and dated September 25, 2019. Lawrence also

---

[1] The complaint was answered by "Todd Swalley dba TS Construction."

2

attached construction loan documents from the bank that listed "TS Construction" as the builder on the project.

C.    *Motion For Summary Judgment*

Swalley filed a motion for summary judgment, arguing he was entitled to judgment as a matter of law because there was no valid and enforceable contract between Lawrence and his company TS Construction.[2]  In his sworn declaration, Swalley stated that he: (1) "never performed any work on [Lawrence's] home"; (2) "never received any payment for performing work on [Lawrence's] home"; and (3) "never received any payment from [Lawrence], from [Lawrence's] Lender, or from anyone making payment on [Lawrence's] behalf."  Swalley further asserted that once Lawrence received the construction loan, she advised him that she did not intend to use his company because "she had hired a contractor named GVS to perform the same scope of work" as described in the July 2019 contract.  Swalley claimed any contract he had with Lawrence was superseded by a November 4, 2019 contract (November 2019 contract) between Lawrence and GVS.

In his supporting "notice of lodgment," Swalley submitted, among other things, the following: (1) the July 2019 contract between Lawrence and TS Construction; (2) the November 2019 contract between Lawrence and GVS; (3) e-mails Lawrence previously produced that document her communication with Bill Brown, the owner of GVS, from November 18, 2019 through September 2, 2020; (4) invoices Lawrence previously produced that reflect the bills she received from GVS dated November 18, 2019 through November 6, 2020; (5) an inspection activity report dated November 20, 2019 that was previously submitted by Lawrence that lists GVS as the contractor; (6)

---

[2] The parties variously refer to defendant as Swalley and as TS Construction, as do we.

3

change orders GVS sent to Lawrence dated March 5, 2020 through October 7, 2020; and (7) an e-mail from Bill Brown to the bank, dated May 11, 2021, stating that he would be filing a mechanic's lien due to Lawrence's "lack of payment and breach."

Swalley also submitted a sworn declaration from Bill Brown, the owner of GVS, in which Brown stated GVS performed all work on the project until November 2020, when GVS quit the project due to lack of payment. GVS subsequently filed a lien on Lawrence's home. Brown stated that GVS had never received payment on Swalley's or TS Construction's behalf and that Swalley/TS Construction "had no role whatsoever" on the project. Brown further stated that GVS had initially signed a contract with Lawrence on March 6, 2019 (March 2019 contract). "However, due to [Lawrence's] delays in obtaining a construction loan, [Brown] updated the contract . . . in November 2019 to reflect the new start date." Brown attached a copy of the November 2019 contract to his declaration.

Swalley stated that "[f]rom time to time" after the November 2019 contract, he "communicated with [Lawrence] and Bill Brown of GVS when problems arose." Nevertheless, Swalley remained steadfast in his assertions that he: (1) was "never hired or compensated to function as a consultant or in any other role" on the project; (2) "never received any payment for performing work" on the project; and (3) "never received any payment" from Lawrence, her lender, or from anyone making payment on Lawrence's behalf.

Swalley argued that even if the July 2019 contract was valid, Lawrence's numerous breaches excused any non-performance by his company. The alleged breaches included Lawrence's: (1) failure to pay the down payment for "[m]obilization" as required by the July 2019 contract; (2) failure to pay TS Construction any compensation under the July 2019

4

contract; and (3) violation of the July 2019 contract by communicating with Bill Brown of GVS directly and directly hiring GVS to perform work.

In opposition, Lawrence argued the only valid contract she had with GVS was the March 2019 contract, which preceded the July 2019 contract with Swalley and TS Construction. Lawrence attached numerous exhibits to her opposition brief in the trial court (rather than attaching them as exhibits to a declaration). Lawrence disputed Swalley's non-payment claims. Attached to her opposition brief were over a dozen receipts for progress payments entitled "Form of Unconditional Waiver and Release Upon Progress Payment"(form releases) (orig. capitalization omitted); each one lists an amount Lawrence purportedly paid to the "undersigned company" for labor and services at the project. The company name on the signature line for each such document is printed as "GVS/TSC"; the signature of an unnamed "President" is illegible. Lawrence also attached to her opposition briefs invoices in corresponding dollar amounts that were issued on pre-printed forms that state "GVS." Additionally, Lawrence attached copies of "draw tickets," apparently from the bank, that documented funds apparently withdrawn on a construction loan; "TS Construction" was listed as the "Builder" on each draw ticket.

Lawrence disclaimed Swalley's contention that no work was performed by TS Construction. She cited to text messages attached to her opposition brief that purportedly "show[] . . . Swalley's involvement in the project"; she further claimed to have "witnessed [his] presence at construction planning meetings and on-site work." The text messages attached to the opposition, which are not in chronological order, or otherwise authenticated, appear to span from October 2020 through November 2022. In one undated text message, Lawrence states: "Do you know your company is playing with the

5

mental stability of a whole family." Purportedly the message was sent to Swalley, who responded: "Please don't say my company Julia you have a contract with Bill Brown that's your contract I don't have a contract with you [¶] I'm doing what I can to help you facilitate Bill Brown so please don't put me in the middle I'm doing what I can to help you."

To the extent Swalley claimed he never received payment, Lawrence's opposition papers asserted she had "recently requested copies of cancelled checks from [the bank] to determine whether TSC cashed them, suggesting that pending written discovery could reveal more triable issues of material fact."

In her accompanying declaration, also attached as an exhibit to her opposition brief, Lawrence stated the bank would not approve Brown to work on the project "due to his commitments with another client also funded by the bank." According to Lawrence, after she was unable to secure an approved contractor, Brown "suggested" she "try working" with "his partner, Todd Swalley, owner of TS Construction" to get the loan approved. Swalley then completed all the necessary paperwork from the bank; after the bank approved TS Construction, "all relevant documents" were sent to Swalley for his signature, including a detailed construction budget.

Lawrence denied that she told Swalley she was not going to use his company and was going to use GVS "without bank authorization." She further disclaimed that she signed the November 2019 contract with GVS. According to Lawrence, "TS Construction and [GVS] would send [her] invoices of work completed. All requests would come with the invoice, along with the Form of Unconditional Waiver and Release Upon Progress Payment." Lawrence maintained that the bank required the release forms "for each payment made to TS Construction." She further averred that

6

"Under the section 'Company Name' on the [release forms], it will reflect GVS/TSC, which stands for Green Valley Structural and TS Construction." Lawrence also "vehemently" disputed that she executed the November 2019 contract with GVS.

Swalley filed evidentiary objections to Lawrence's opposition brief and supporting declaration, in particular objecting to the extent she claimed TS Construction and GVS "were always working as [p]artners on the construction project" and it was "clear to [her] that IT'S [*sic*] Construction managed the progress of the work."

D.    *Summary Judgment Granted in Swalley's Favor*

The trial court granted summary judgment in favor of Swalley/TS Construction, finding Lawrence failed to submit admissible evidence creating a triable issue of material fact in support of her breach of contract action against Swalley/TS Construction.[3] The court determined that irrespective of when Lawrence entered the contract with Swalley/TS Construction, the contract required Lawrence to make a $10,000 progress payment upon mobilization, which "[t]he undisputed facts" demonstrate she "did not pay." Lawrence cited "no admissible evidence that she actually paid [Swalley/TS Construction] any money to perform on the contract, nor does she cite any admissible evidence that [Swalley/TS Construction] was paid by anyone else (e.g. [the bank] or GVS) to perform such work." Additionally, Lawrence did not submit any admissible evidence supporting her assertion that TS Construction and GVS acted as partners and that the other contracting party

---

[3] The court did not reach any conclusion regarding Lawrence's apparent suggestion that her July/September 2019 contract with Swalley/TS Construction superseded her earlier March 2019 contract with GVS.

7

was "GVS/TSC." The trial court noted that Lawrence's exhibits were "neither specifically referenced [in her opposition brief] nor authenticated."

The order granting summary judgment did not contain any express evidentiary rulings on Lawrence's exhibits because, as the court noted, Swalley did not file any evidentiary objections to Lawrence's exhibits. The court sustained some of Swalley's evidentiary objections to Lawrence's declaration, including that Lawrence lacked personal knowledge and foundation to support her claim that TS Construction and GVS were working as partners; the court likewise ruled Lawrence's claim was an inadmissible opinion on a legal issue. The court also sustained Swalley's objection to Lawrence's declaration regarding her claim that TS Construction managed the progress of the work, on the grounds there was a lack of personal knowledge and foundation.

E.  *Lawrence's Motion for Reconsideration*

Lawrence filed a motion for reconsideration (Code Civ. Proc., § 1008) of the order granting Swalley's motion for summary judgment. The motion was based on exhibits attached to her attorney's declaration in support of the motion to reconsider. The attached exhibits were duplicates of the exhibits Lawrence previously submitted with her opposition to Swalley's summary judgment motion. Lawrence also submitted the following: (1) a signature line from the retainer agreement she had signed with her counsel; (2) the court's order granting summary judgment; and (3) an email from Swalley to Lawrence dated October 20, 2020, offering to meet with Lawrence to discuss additional items outside the scope of the original project. In connection with her reply brief, Lawrence submitted additional exhibits: (1) an email from her attorney to Swalley's counsel dated October 7, 2024 referencing an "attached motion e-filed earlier" that day; (2) a screenshot from a website referring to

8

"Green Valley Build, Inc."; (3) a duplicate of Brown's declaration filed in support of Swalley's motion for summary judgment; (4) a printout from the state license board referencing the revocation of GVS's contractor license; and (5) a printout from a search conducted with the California Secretary of State regarding GVS.

The trial court denied Lawrence's motion to reconsider on the grounds that the information she presented was not new and had no relevance to the matter at hand—i.e. her "performance of her alleged contract" with Swalley/TS Construction. In so ruling, the court did not consider the five exhibits attached to Lawrence's reply papers.

F.     *Lawrence's Prior Appeal*

Lawrence purported to appeal from the orders granting summary judgment and denying reconsideration prior to entry of judgment. After giving Lawrence many opportunities to obtain a judgment from the trial court, we dismissed the appeal for lack of an appealable judgment. (See *Lawrence v. Swalley* (A172414, June 17, 2025, Order Dismissing Appeal).) After eventually obtaining a final judgment, Lawrence filed the instant appeal.

## DISCUSSION

## I.

### Law of Summary Judgment and Standard of Review

Summary judgment may be entered when "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) When moving for summary judgment, a defendant must demonstrate " 'that a cause of action has no merit' " by showing either " 'that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that

9

cause of action.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)  Once a defendant meets this initial burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).)

We review a trial court's grant of summary judgment de novo, "liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party."  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  Summary judgment is presumed to be correct if the appellant fails to meet the burden to affirmatively show error.  (See *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 252.)

## II.

### Forfeiture

Lawrence endeavors to raise numerous entirely new claims for the first time on appeal.  In her opening brief, Lawrence claims for the first time that the motion for summary judgment was filed in "bad faith" and that Swalley/TS Construction and Brown/GVS have engaged in a "coordinated effort . . . either to avoid liability or at worst, defraud [her] and the Court."  Lawrence further contends Brown's declaration in support of Swalley's motion for summary judgment should be disregarded because it "lacks proper electronic signature verification."  Lawrence also claims that "as a suspended entity" GVS "cannot legally participate in this lawsuit."  Lawrence represents that "even if GVS were in good standing" Brown's declaration "submitted in his individual capacity, holds no evidentiary weight and should be stricken from the record."

10

Additionally, Lawrence asserts there is an ambiguity in the operative contract with TS Construction regarding the meaning of the term "[m]obilization." She further contends TS Construction "waive[d]" its contractual rights by engaging in purported "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been '[r]elinquished.' "

Finally, for the first time in her reply brief, Lawrence requests that we "allow[]" her "to pursue her claims on the [m]erits by naming (GVS) and Bill Brown as [d]efendants." Because none of these claims were raised below, we will not consider them on appeal. (See *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings," and "[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"]; *Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [It is well established when a motion for summary judgment has been granted, "[t]he opposing party may not raise an issue for the first time on appeal"]; see also *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument' "].)

### III.

### Waiver

With respect to all of the "issues" Lawrence has raised on appeal, whether alleged in the trial court or advanced for the first time on appeal,

11

her briefing violates numerous California Rules of Court and falls short in demonstrating the trial court erred in entering judgment against her.[4]

To begin, Lawrence's appellate briefs lack any semblance of organization. The opening brief contains what appears to be an amalgamation of portions of the brief she filed in her first appeal added to the current appeal; there are three separate signature pages interspersed throughout the document.

Additionally, pursuant to California Rules of Court, rule, 8.204(a)(1)(B), each brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." Here, the opening brief includes the following headings: "Three key argument raise [*sic*] by Defense"; "A. Defense alleges that Appellant [*sic*] motion for Reconsideration is untimely"; "B. Defendant admits awareness of Appellant [*sic*] new Evidence Raising a Triable Issue of Fact, yet proceeded with the Motion for Summary Judgment in Bad Faith"; "C. Appellant [*sic*] Counsel uncovered critical Evidence and established clear Triable Issues of Fact"; and "Conclusion."

"We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) Lawrence's opening brief presents no actual arguments. Instead, it recites the facts and underlying procedural history. The appealing party "cannot simply say the court erred[ ] and leave it up to the appellate

---

[4] Lawrence filed her appellate briefs in propria persona. Lawrence's pro per status does not excuse her from complying with the rules governing appellate briefs, as " ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' " (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267; accord, *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

court to figure out why." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) " 'The reviewing court is not required to make an independent, unassisted study of the record in search of error . . . . [E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.) Unexplained citations to the record and/or case law may be disregarded. (See *Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at p. 52 ["citing cases without any discussion of their application to the present case results in forfeiture"].)

Although Lawrence has forfeited arguments in her appellate briefs, we decline to simply affirm the judgment without any evaluation of Swalley's motion. On a motion for summary judgment, even in the absence of a formal opposition, the moving party must satisfy its initial burden to show there are no triable issues. (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086–1087.) "[T]he burden on the motion does not initially shift as a result of what is, or is not, contained in the opposing papers. And because a reviewing court employs the same three-step process in the course of its de novo review of a summary judgment [citation], this conclusion applies with equal force on appeal." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367, fn. omitted.) Thus, despite Lawrence's inadequate briefing, we will analyze whether Swalley met his initial burden of demonstrating the absence of triable issues.

## IV.

## Consideration on Merits

As a defendant moving for summary judgment, Swalley bore the initial burden to show Lawrence's breach of contract action lacked merit. (*Teselle v.*

*McLoughlin* (2009) 173 Cal.App.4th 156, 168–169.) To meet his burden, Swalley was required to present sufficient evidence showing he is entitled to judgment as a matter of law because there is no factual basis for relief on any theory reasonably contemplated by Lawrence's complaint. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 847–848.)

As noted, Lawrence sued Swalley for breach of contract based on her allegation that she paid Swalley/TS Construction for work that Swalley/TS Construction did not perform. The elements of a breach of contract claim are (1) the existence of the contract; (2) the plaintiff's performance of the contract or excuse for non-performance; (3) the defendant's breach of the contract; and (4) the resulting damage to the plaintiff. (*Coles v. Glaser* (2016) 2 Cal.App.5th 384, 391; *Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 70.) Swalley carried his initial burden on summary judgment by presenting evidence to show he did not have a valid contract with Lawrence and, even if he did, he did not breach a contractual duty to Lawrence due to her material breach of the contract. (See Civ. Code, § 1439; *Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 12 [material breach by one party excuses performance by other party].)

Accordingly, we conclude the trial court did not err in granting the motion for summary judgment.

## V.

## Motion For Reconsideration

Notwithstanding Lawrence's failure to provide cogent legal analysis regarding the trial court's denial of her motion for reconsideration, we conclude any claim of error is without merit.

A motion for reconsideration under Code of Civil Procedure section 1008 must be based on new or different facts, circumstances, or law. " 'A

party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time.' [Citation.] 'The burden under section 1008 is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it' at the original hearing." (*Cradduck v. Hilton Domestic Operating Co., Inc.* (2025) 112 Cal.App.5th 284, 304.) Rulings on motions for reconsideration are reviewed for an abuse of discretion. (*Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239, 243.) We find no such abuse here.

The record reflects that the evidence Lawrence submitted in support of her motion for reconsideration was irrelevant and not new. Even assuming for the sake of argument that Lawrence presented relevant, new evidence, she did not offer any argument why any or all of this evidence, with reasonable diligence, could not have been presented at or prior to the summary judgment proceedings. Accordingly, she did not make the requisite showing necessary for a motion for reconsideration under Code of Civil Procedure section 1008. The trial court did not abuse its discretion in denying the motion for reconsideration.

## DISPOSITION

The judgment is affirmed. Swalley is entitled to recover his costs on appeal.

15

_____

Miller, J.

WE CONCUR:

_____

Stewart, P. J.

_____

Desautels, J.

A174008, *Lawrence v. Swalley*